IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST
VIRGINIA

―――――――――――――――――――――――――X
:
:
:
JANE DOE, individually and as next friend to her : Civil Action No:
minor daughters, ANNE DOE, BETH DOE and :
CAROL DOE, :
:
: ECF Case
       Plaintiffs, :
:
   v. :
: Honorable
WOOD COUNTY BOARD OF EDUCATION, :
J. PATRICK LAW, Superintendent, in his Official :
Capacity, STEPHEN TAYLOR, Principal, Van : **Memorandum of Law in**
Devender Middle School, in his Official and Individual : **Support of Plaintiffs' Motion**
Capacity, and PENNY TONELLI COLEMAN, Former : **to Proceed Under Pseudonym**
Assistant Principal of Van Devender Middle School, :
in her Individual Capacity. :
:
       Defendants. :
:
:
―――――――――――――――――――――――――X

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO PROCEED UNDER PSEUDONYM

  Plaintiff Jane Doe, next friend to her minor children Anne Doe, Beth Doe and Carol Doe,[1] by and through her attorneys, respectfully requests leave to proceed under pseudonym.

### I. INTRODUCTION

  Plaintiffs seek leave to proceed under pseudonym in this action challenging unlawful sex discrimination at Van Devender Middle School ("VDMS") part of Wood County Schools ("WCS"). Jane Doe seeks anonymity in this litigation for the purpose of protecting her minor

---

[1] Jane Doe, Anne Doe, Beth Doe, and Carol Doe are pseudonyms.

1

daughters from retaliation, harassment and invasion of privacy, all of which will likely occur if the Plaintiffs' identities are disclosed to the public.  As described herein, anonymity is necessary to allow Jane Doe to challenge the discriminatory treatment that her daughters have suffered in the "gender-based" education program at VDMS while ensuring their safety and privacy.

## II.     BACKGROUND AND FACTS

This is a civil rights action seeking declaratory and injunctive relief against the gender-based education program at VDMS, located in Parkersburg, West Virginia.  Specifically, VDMS separates boys and girls in core academic classes in the sixth, seventh and eighth grades and tailors teaching methods to broad generalizations about students, based on their sex.  As described in the complaint, the gender-based educational program at VDMS violates the Fourteenth Amendment's Equal Protections Clause (pursuant to 42 U.S.C. § 1983), Title IX of the Education Amendments of 1972 ("Title IX") and the Title IX implementing regulations of the United States Departments of Education, Health and Human Services, Agriculture and Homeland Security.

The Plaintiffs are Jane Doe, a current Van Devender parent, and her children Anne Doe, Beth Doe and Carol Doe, three rising seventh-grade students who participated in single-sex classes at VDMS during the 2011-2012 school year.  The Does were deprived of educational opportunities and harmed by the gender-based program at VDMS, as described in the complaint. Jane Doe and her family reside together in a home in Parkersburg, West Virginia.  Recently, the Wood County Board of Education voted to approve continuation of the gender-based program at VDMS for the 2012-2013 school year, meaning that the Does will be required to attend gender-based classes at VDMS this fall and presumably until they matriculate from VDMS in 2014.

The gender-based educational program at VDMS has been the subject of much controversy in Parkersburg, West Virginia, and is popular among some segments of the local population.  The program has been actively and vocally promoted by the school's principal and other members of the faculty at VDMS at public meetings and in the press.  *See* Michael Erb, *Single Gender Classes Could Cost Wood County Schools*, PARKERSBURG NEWS AND SENTINEL (June 27, 2012), *available at* http://www.newsandsentinel.com/page/content.detail/id/562502/Single-gender-classes-could-cost-Wood-County-Schools.html (last visited Aug. 10, 2012); Michael Erb, *Wood BOE votes to keep Vandy single-gender classes*, PARKERSBURG NEWS AND SENTINEL (July 3, 2012), *available at* http://www.newsandsentinel.com/page/content.detail/id/562659/Wood-BOE-votes-to-keep-Vandy-single-gender-classes.html (last visited Aug. 10, 2012).  The local press, which consists of one mainstream newspaper, has also actively promoted and encouraged the gender-based program. *See ACLU Threat*, PARKERSBURG NEWS AND SENTINEL (May 25, 2012), *available at* http://www.newsandsentinel.com/page/content.detail/id/563691/ACLU-Threat.html?nav=5057 (last visited Aug. 10, 2012).

Plaintiff Jane Doe does not wish for her daughters to continue to suffer from the unequal treatment they received in sex-segregated classrooms at VDMS, but fears that, as a result of this litigation, faculty and community members will harass her daughters and retaliate against them. There are strong grounds for fearing this.  For example, when Jane Doe attempted to address her concerns about the gender-based program during a parent-teacher meeting, the teacher reacted in a hostile manner and raised her voice at Jane Doe. J. Doe Decl. ¶ 5. Also, the close relative of a member of the Wood County Board of Education recently approached and aggressively

questioned Carol Doe about her opinion of the gender-based program while Carol was attending her grandfather's funeral. C. Doe Decl. ¶ 11.

In addition, the controversy over single-sex education in Wood County has received a large amount of statewide and national news coverage. *See e.g. ACLU plans suit challenging West Virginia district's single-sex classes,* NSBA LEGAL CLIPS, Aug. 2, 2012, *available at* http://legalclips.nsba.org/?p=15637 (last visited Aug. 10, 2012); Michael Erb, *Single Gender Classes Could Cost Wood County Schools*, PARKERSBURG NEWS AND SENTINEL (June 27, 2012), *available at* http://www.newsandsentinel.com/page/content.detail/id/562502/Single-gender-classes-could-cost-Wood-County-Schools.html (last visited Aug. 10, 2012); Michael Erb, *ACLU plans to sue Wood County Schools*, PARKERSBURG NEWS AND SENTINEL (July 31, 2012) *available at* http://www.newsandsentinel.com/page/content.detail/id/563623.html (last visited Aug. 10, 2012). Plaintiff fears that her daughters will not only be harassed by community members if their identities are disclosed, but that they will be targeted by individuals and media outlets across West Virginia and the United States. Jane Doe anticipates that her daughters will testify to highly sensitive and personal information to demonstrate the harm that the single-sex program has caused them and fears that this highly personal and private information about her daughters will be widely disseminated in the media.

### III. ARGUMENT

#### A. Leave to Proceed Pseudonymously is Necessary and Appropriate in this Action

Plaintiff Jane Doe on behalf of her minor daughters Ann Doe, Beth Doe and Carol Doe, respectfully seeks this Court's permission to proceed under pseudonyms because her daughters' participation in this litigation places them at serious risk of retaliation, intense public hostility, harassment, and invasion of privacy.

4

Although Federal Rule of Civil Procedure 10(a) requires that the title of a complaint name all parties, Fed. R. Civ. P. 10(a), federal courts, including the Fourth Circuit, permit parties to proceed anonymously in certain circumstances. *See e.g., James v. Jacobson,* 6 F.3d 233 (4th Cir. 1993); *Does I thru XXIII v. Advanced Textile Corp.,* 214 F.3d 1058 (9th Cir. 2000). Courts exercise this discretion especially when anonymity is sought to protect the privacy and safety of children. *See e.g.*, *Jacobson,* 6 F.3d at 238; *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981).

In determining whether to grant a request to proceed under pseudonym, the courts conduct a case-specific balancing of the party's interests in anonymity and the competing interests at stake. The Fourth Circuit has articulated factors to be considered in determining whether to grant such a request: (1) the age of the person whose privacy interests are to be protected; (2) whether anonymity is requested to avoid the annoyance and criticism that may attend any litigation, or to preserve privacy in a matter of sensitive and highly personal nature; (3) whether identification poses a risk of retaliatory physical or mental harm; (4) whether the action is against a governmental or private party; and (5) the risk of unfairness to the opposing party if the plaintiff is allowed to proceed pseudonymously. *See Jacobsen,* 6 F.3d 233, 238, 242. The balancing of these factors weighs heavily in favor of allowing the Plaintiffs to proceed pseudonymously in this matter.

### 1. Anonymity is Warranted Because of the Young Age of the Plaintiff's Daughters Whose Privacy Interests are Sought to be Protected

Courts will often grant anonymity to plaintiffs to protect the privacy and safety interests of children, when they would not do so for adults. See, e.g., *Stegall,* 653 F.2d at 186 (noting that the gravity of the danger posed by threats of retaliation against the Does for challenging a controversial school program were assessed "in light of the special vulnerability of [. . .] child plaintiffs"); *Doe v. Santa Fe Indep. Sch. Dist.,* 933 F.Supp. 647, 651–52 (S.D. Tex. 1996)

(refusing to protect the identities of adult plaintiffs "who are simply not as vulnerable as schoolchildren to social and physical intimidation or violence centered around events at public schools"). The Fourth Circuit recognizes that the "ages of the persons whose privacy interests are sought to be protected" is a critical factor in deciding whether to grant a plaintiff's request to proceed pseudonymously. *See Jacobson,* 6 F.3d at 238-39. The youth of parties to be protected is "a significant factor in the matrix of considerations arguing for anonymity . . ." and threats of retaliation must be assessed "in light of the special vulnerability of [...] child-plaintiffs. *Stegall*, 653 F.2d at 186.

Anne Doe, Beth Doe and Carol Doe are all 12 years-old, far below the age of majority, and are significantly more vulnerable to retaliation, harassment and invasion of privacy than a similarly situated adult plaintiff. All three girls are under the control and supervision of the Defendants, as well as administrators and teachers, many of whom vigorously support the gender-based program. Any harassment or retaliation against the Plaintiffs at school could significantly disrupt their education and the relationships that they form with mentors and peers. If the faculty members at VDMS take offense at the Plaintiffs' testimony and are inclined to respond by retaliating against the Does, they have many ways to do so that, as a practical matter, are subject to no meaningful review. The child-Plaintiffs' vulnerability and age, combined with the risks of retaliation, harassment and invasion of privacy, weighs decidedly in favor of granting leave to proceed pseudonymously. Moreover the anonymity of the children would be destroyed if the identity of their mother was revealed, which weighs strongly in favor of granting anonymity to all four Plaintiffs.

### 2. Anonymity is Necessary to Protect Highly Private and Sensitive Information from Public Disclosure

When litigation will reveal highly sensitive and personal matters about a plaintiff, the courts weigh the plaintiff's privacy interests in favor of granting anonymity. *See Jacobsen*, 6 F.3d at 238. Numerous courts have granted anonymity to protect against disclosure of a wide range of private matters. *See e.g., See Jacobsen*, 6 F.3d at 238; *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981) (religious beliefs)*; Southwest Methodist University Association of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712-13 (5th Cir. 1979) (sex discrimination in hiring practices); *Doe v. Hartford Life & Accident Ins. Co.*, 237 F.R.D. 545 (D.N.J. 2006) (mental illness); *EW v. New York Blood Ctr.,* 213 F.R.D. 108, 111 (E.D.N.Y. 2003) (infection with hepatitis B); *Doe v. Evans*, 202 F.R.D. 173, 176 (E.D. Pa. 2001) (sexual assault victim); *WGA v. Priority Pharmacy, Inc.,* 184 F.R.D. 616, 617 (E.D. Mo. 1999) (status as AIDS patient); *Doe v. United Servs. Life Ins. Co.,* 123 F.R.D. 437, 439 (S.D.N.Y. 1988) (sexual orientation); *Moe v. Dinkins,* 533 F. Supp. 623 (S.D.N.Y. 1981) aff'd, 669 F.2d 67 (2d Cir. 1982) (minors seeking to marry without parental consent); *Campbell v. U.S. Dept. of Agriculture*, 515 F. Supp. 1239 (D.D.C. 1981) (eligibility for food stamps).

In the present action, Jane Doe and her daughters will disclose highly personal and sensitive information. First, the girls' medical conditions and histories will be revealed. Beth Doe will testify regarding her diagnosed behavioral disorder, ADHD, and humiliating instances of punishment that resulted from her inability to sit still in the all-girls' classroom as a result of her condition. B. Doe Decl. ¶ 4. It will also be revealed that Anne Doe is legally blind. J. Doe Decl. ¶ 13; A. Doe Decl. ¶ 5. Second, the daughters will reveal their intimate views of gender, and that certain of the school's employees have made them feel that, as females, they had to act certain ways and behave according to certain gender stereotypes. Third, the children's academic

performance, including grades, test scores and disciplinary records will be disclosed.  Fourth, the children will disclose their feelings of and impressions about teachers and administrators who supervise and evaluate them—many of whom vigorously support the single-sex curriculum.

Jane Doe strongly believes that disclosing her daughters' personal information and records to the public would be humiliating to them, especially in light of their vulnerable age.  As described above, the controversy surrounding gender-based instruction at Wood County has received significant local, state and national publicity.  Proceeding under pseudonyms is necessary to prevent wide dissemination of inherently private and sensitive information about the children's medical conditions, personal views of gender identity, impressions of school officials that supervise and grade them, and academic records.

### 3. Anonymity is Necessary to Protect Plaintiff's Children from Hostility and Harassment

Anonymity is especially warranted here because Jane Doe's challenge to the single-sex education program at VDMS exposes her daughters to significant pressure and risk of retaliation.  *See e.g. Jacobsen,* 6 F.3d at 238; *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (affirming district court's granting of leave to proceed pseudonymously where the litigation required "[p]laintiffs to reveal their beliefs about a particularly sensitive topic that could subject them to harassment," and Plaintiffs' position had been the subject of a negative letter to the local newspaper); *Stegall*, 653 F.2d at 186 (finding anonymity warranted where "[e]vidence on the record indicates that the Does may expect extensive harassment and perhaps even violent reprisals if their identities are disclosed to a . . . community hostile to the viewpoint reflected in Plaintiffs' complaint"); *Doe v. Barrow County, Georgia*, 219 F.R.D. 189, 193-94 (N.D. Ga. 2003) (concluding, *inter alia*, that the hostile community reaction to persons expressing opposition to the challenged governmental action weighed in favor of permitting plaintiff to

proceed anonymously); *Doe v. Harlan County School Dist.*, 96 F.Supp.2d 667, 671 (E.D. Ky. 2000) (finding anonymity appropriate where "[b]ecause of the public's interest in the issue, the plaintiffs might be subject to humiliation and harassment if their identities are disclosed"). The gender-based program at VDMS has been actively and vocally promoted by the school's principal and teachers at public assemblies, and has been the subject of numerous press reports.

Similar to the circumstances in *Stegall*, where plaintiffs feared harassment and violence from the local community for challenging school prayer, the Plaintiff and her daughters face a small community that is likely "hostile to the viewpoint reflected in plaintiffs' complaint" as demonstrated by the news accounts describing the sex-segregated program, and Plaintiff's daughters are likely to face ostracism. *Id.* at 182-83,186. Moreover, school administrators and teachers, who the plaintiffs plan to directly contradict in testimony, wield enormous power over the Does, as students. Jane Doe fears that her daughters will be especially vulnerable to retaliation as the Defendants and Defendants' witnesses are responsible for decisions regarding her daughters' grades, disciplinary infractions and eligibility to participate in extracurricular activities, athletics and other programs at VDMS.

**4. Anonymity is Warranted Because the Defendants are Government Parties**

The fourth factor to be considered is whether the action is against a government or private party. *See Jacobsen*, 6 F.3d at 238. "[C]ourts in general are less likely to grant a plaintiff permission to proceed anonymously when the plaintiff sues a private individual than when the action is against a governmental entity seeking to have a law or regulation declared invalid." *Doe v. Pittsylvania County, Va.*, 844 F. Supp. 2d 724 (W.D. Va. 2012); *Merten,* 219 F.R.D. at 394 (citing *Wynne & Jaffe,* 599 F.2d at 713). Actions against the government do no harm to its

9

reputation, whereas suits filed against private parties may damage their reputations and cause economic harm. *Wynne & Jaffe,* 599 F.2d at 713.

In this situation, the Defendants include a local school board, as well as a principal and superintendent acting within their roles as school administrators. The issues being litigated involve an institutionalized program that was planned, promoted and approved by the local government agency and its officials. The public will have access to the anonymized transcripts of proceedings, including the relevant facts of the case, making it highly unlikely that individually named Defendants' will suffer any more harm to their reputations than if Plaintiffs were to identify themselves. Thus, the fact that Plaintiffs are challenging a government program, in addition to the narrow nature of the request for anonymity, weighs in favor of the Plaintiffs' request for anonymity.

### 5. Plaintiffs' Anonymity Will Cause No Prejudice to the Defendants

Defendants will suffer no prejudice if the Plaintiffs proceed pseudonymously and only minor administrative inconvenience. The issues and facts that are relevant to the litigation do not depend on the identities of the Plaintiffs, as the claims at issue in this litigation are primarily legal. *See Merten*, 219 F.R.D. at 394 n. 22 (citing *Doe v. Alaska*, No 96-35873, 1997 WL 547941, at *1 (9th Cir. Sept. 2, 1997); *Lozano v.* Hazelton, 620 F.3d 170, 195 (3d Cir. 2011); *Does I thru XXIII v. Advanced Textile Corp*., 214 F.3d 1058, 1072-73 (9th Cir. 2000). The majority of the Plaintiffs' claims rest on factual information that remains undisputed and was provided by the Defendants in response to a West Virginia Freedom of Information Act Request. Rogers Aff. Ex. 1. The requested Protective Order is sufficiently narrow to allow Defendants access to necessary discovery and factual information and seeks to shield only Plaintiffs' names from disclosure to the general public. *See Roe v. Aware Woman Center for Choice, Inc.,* 253

F.3d 678, 687 (11th Cir. 2001) (holding that where plaintiff offered to disclose her name to the defendants for discovery purposes on condition that they not disclose her name to the general public was a reasonable way to reconcile competing interests and appropriate for a protective order granting psuedonymity); *see also Doe No. 2 v. Kolko,* 242 F.R.D. 193, 198 (E.D.N.Y. 2006) (concluding that defendants "[would] not be hampered or inconvenienced merely by plaintiff's anonymity in court papers").

Moreover, the use of pseudonyms and anonymized transcripts strikes the proper balance between protection of the child-litigants and accommodation of the public right to inspect court documents and participate in court proceedings. *See Stegall*, 653 F.72 at 185 ("Party anonymity does not obstruct the public's view of the issues joined or the court's performance in resolving them. The assurance of fairness preserved by public presence at a trial is not lost when one party's cause is pursued under a fictitious name").

## IV.    CONCLUSION

Anonymity is necessary for Plaintiffs to proceed in challenging the discriminatory treatment of Jane Doe's daughters at VDMS while ensuring their safety, well-being and privacy. In the course of litigation, the Does will likely find it necessary to testify about sensitive information, including confidential school records, medical status, relationships with teachers and views on gender identity. As noted above, challenging the gender-based program at VDMS exposes Plaintiff's daughters to significant social pressure and fear of retaliation.

Furthermore, Defendants will not be prejudiced if the Plaintiffs are permitted to proceed pseudonymously. Because Plaintiffs challenge a governmental entity and government actors, there is no danger that a private individual's reputation will be harmed. The claims involved in this case challenge the constitutionality and legality of the gender-based educational program at

VDMS, therefore the merits of the issues will not turn on the identity of the Plaintiffs. The requested protection of anonymity is sufficiently narrow to avoid prejudice to Defendants, as the anonymyzed court documents will contain all relevant facts to the litigation. Plaintiffs therefore respectfully request that the Court grant this Motion and the Proposed Protective order allowing them to proceed under pseudonyms.


Dated: August 15, 2012                                    Respectfully Submitted,


                                                          /s/Roger D. Forman
Sarah Rogers (*pro hac vice* pending)                     Roger D. Forman
Staff Attorney, American Civil Liberties Union            Law Offices of Roger D. Forman LC
of West Virginia Foundation                               100 Capitol Street
P.O. Box 3952                                             Suite 400
Charleston, WV 25339-3952                                 Charleston, WV 25301
(304) 345-9346                                            304-346-6300
srogers@acluwv.org                                        rdf@citynet.net

Lenora M. Lapidus                                         Roxann E. Henry (*pro hac vice* pending)
(*pro hac vice* pending)                                  Marissa P. Harris (*pro hac vice* pending)
Galen Sherwin (*pro hac vice* pending)                    Joshua A. Hartman (*pro hac vice* pending)
Amy Lynn Katz (*pro hac vice* pending)                    Morrison & Foerster LLP
Christina Brandt-Young                                    2000 Pennsylvania Avenue, NW
(*pro hac vice* pending)                                  Suite 6000
American Civil Liberties Union Foundation                 Washington, D.C. 20006
Women's Rights Project                                    (202) 887-1500
125 Broad Street, 18th Floor                              RHenry@mofo.com
New York, NY 10004                                        MHarris@mofo.com
(212) 549-2615                                            JHartman@mofo.com
LLapidus@aclu.org
gsherwin@aclu.org
wrp_ak@aclu.org
wrp_cby@aclu.org


                                                          *Attorneys for Plaintiffs*

12

## **CERTIFICATION AND CERTIFICATE OF SERVICE**

I hereby certify that Defendants and Defendants' counsel has been provided a copy of the Plaintiffs' Motion to Proceed Under Pseudonym and Memorandum in Support of Plaintiffs' Motion to Proceed Under Pseudonym via email this the ____ day of August, 2012.

_____