IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

JANE DOE, individually and as
next friend to her minor daughters,
ANNE DOE, BETH DOE and
CAROL DOE,

        Plaintiffs,

vs.                                                CASE NO. 6:12-cv-04355
                                                JUDGE GOODWIN
WOOD COUNTY BOARD OF EDUCATION,
J. PATRICK LAW, Superintendent, in his Official
Capacity, STEPHEN TAYLOR, Principal,
Van Devender Middle School, in his Official and
Individual Capacity, and PENNY TONELLI COLEMAN,
Former Assistant Principal of Van Devender Middle School,
in her Individual Capacity,

        Defendants.

**DEFENDANTS' RESPONSE
TO PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION**

        Comes now Defendants, Wood County Board of Education, J. Patrick Law, Stephen Taylor, and Penny Tonelli Coleman1, by and through their counsel, Robert J. Kent and Aaron C. Boone and for their Response to Plaintiffs' Motion for Permanent Injunction filed in the above-captioned civil action, in the United States District Court for the Southern District of West Virginia, heretofore filed, answers and states as follows:

I.      **SUMMARY OF ARGUMENT**

        In their Complaint, Plaintiffs claim that the Wood County Board of Education single-gender classes at Van Devender Middle School caused them harm. At the August 19,

---

      [1] Defendants submit this Memorandum without waiving any defenses they may have with respect to the sufficiency of this Complaint under Rule 12(b)(6) of Federal Rules of Civil Procedure.

2012, hearing on Plaintiffs' Petition for Temporary Restraining Order, this Court articulated two particular questions it had with respect to Plaintiffs' Complaint, namely: (1) voluntariness of Van Devender's 2011 – 2012 single-gender plan, and (2) whether substantially equal co-educational options are available.   The Court further noted:

> If the record developed [at the August 27, 2012, hearing] shows that the plaintiffs are in fact likely to succeed on the merits, the Constitution and civil rights law will require this disruption to Van Devender Middle School. Teachers and schools should be innovative, and should be encouraged to experiment in their attempts to improve the education of children; however, they must do so within the lines drawn by the Constitution and by the law.

(Order, August 20, 2012, Document 24). In an effort to appropriately define the lines drawn by the Constitution, Defendants' submit the following memorandum.

Contrary to Plaintiffs' and their counsel the American Civil Liberties Union's (ACLU) position, single-gender classes are neither per se unconstitutional nor prohibited under Title IX and federal law and thus Plaintiffs are unable to show a likelihood of success on the merits. It is also questionable whether plaintiffs have standing, whether they have suffered harm or will suffer future harm, and whether this case is moot, all threshold issues that first must be determined before granting an injunction. Finally, it is in the public's interest and preferred under federal law that Wood County be permitted an opportunity to remediate deficiencies in its single-gender program, if any deficiencies exists, rather than being permanently enjoined from offering parents the choice to enroll their children in a single-gender educational program.

## II.    STANDARD OF REVIEW

In Winter v. Natural Res. Def. Council, United States Supreme Court articulated that to obtain a preliminary injunction, the plaintiff must establish: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of

4669003.1

preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." The Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346 (4th Cir. 2009), vacated and remanded by Citizens United v. Fed. Election Comm'n, 130 S. Ct. 876 (2010), reissued in pertinent part on remand by The Real Truth About Obama, Inc. v. Fed. Election Comm'n, 607 F.3d 355 (4th Cir. 2010) (per curiam) citing, Winter v. Natural Res. Def. Council, 555 U.S. 7, 20; 129 S. Ct. 365 (2008).

In Real Truth About Obama, Inc., the Fourth Circuit Court of Appeals made clear that district courts within the Fourth Circuit must apply the Winter factors; in particular, Winter requires that the plaintiff make a clear showing that it is likely to be irreparably harmed. The Real Truth About Obama, Inc., 575 F.3d at 347 (4th Cir. 2009).

## III.   ARGUMENT

### A.   This Court should not grant Plaintiffs a Preliminary Injunctions becausae this extraordinary remedy is intended to Preserve the Status Quo and Not to Disturb It.

In the instant matter, Plaintiffs are seeking a preliminary injunction to demolish the status quo – i.e., to order the Wood County Board of Education to discontinue single-gender education at a middle school where it has been successfully utilized for the last two years. Yet, federal courts disfavor preliminary injunctions that go beyond the traditional purpose, which is only to preserve the status quo until a trial on the merits may be had. See generally Charles Alan Wright, et al., Fed. Prac. & Proc. Civ. § 2948 (2d ed. 2012), SCFC ILC, Inc. v. Visa USA, Inc. 936 F.2d 1096, 1099 (10th Cir. 1991); see also Singleton v. Anson County Bd. of Ed., 387 F.2d 349, 350 (4th Cir. 1967).

Were this Honorable Court to halt the single-gender program in Wood County, not only would it be mooting the entire controversy, but it would also be imposing a vindication

4669003.1

of Plaintiffs' rights prior to any significant discovery on the merits of Plaintiffs' claims, sending a chilling message to all other single-gender programs in the United States in support of the ACLU's broader policy agenda to eliminate all single-gender education nationwide.

In a recent case of *A.N.A. ex rel. S.F.A. v. Breckinridge County Bd. of Educ.*, 833 F.Supp.2d 673, 680-81 (W.D. Ky. 2011)(sometimes referred to hereinafter as "*Breckinridge*") the ACLU brought a similar lawsuit on behalf of students who attended a middle school that also offered voluntary single-gender classes. The plaintiffs asked the United States District Court for the Western District of Kentucky to conclude that Breckinridge County School District's single gender education program violated the United States Constitution, Title IX, 34 C.F.R. 106.34 (b), and other federal law in a complaint nearly identical to the one in the present case. See Plaintiffs' First Amended Compl., *A.N.A. ex rel. S.F.A. v. Breckinridge County Bd. of Educ.*, 833 F.Supp.2d 673, (W.D. Ky. 2011)(No. ___). Plaintiffs sought to enjoin Breckenridge from offering single-gender classes. *Id.* During the preliminary injunction process, the school district worked with the plaintiffs to remedy any concerns and the District Court allowed the program to continue with as little disruption to the student body and the learning environment as possible. Breckenridge County Defendants' Conference Statement at 6, *A.N.A. v. Breckinridge County Bd. of Educ.,* 2008 WL 4056228 (W.D. Ky. Aug. 28, 2009)(No. ___).

After extensive discovery, the District Court in *Breckinridge* dismissed Plaintiffs' civil action, finding that, despite the allegations alleged in their complaint, the Plaintiffs lacked standing because they failed to show how voluntary participation in the program had caused them any actual harm. The court found "no evidence in either type of single-sex classrooms that any stereotypical strategies are used for either girls or boys." *Breckinridge County Bd. of Educ.*, 833 F.Supp.2d at 680-81 (W.D. Ky. 2011)(citing Report of Patricia Campbell (No. 234–17) at 4;

4

Report of Kathleen Ronay (No. 219–15) at 16.). The findings of the plaintiffs' own expert who, observed twenty classes at the school, were in marked contrast to plaintiffs' complaint, which, as in this case, alleged that teachers employed gender-differentiated teaching based on gender stereotypes.

*Breckenridge* shows why this Court should not grant an injunction prior to full discovery. Had the *Breckenridge* court relied on the ACLU's assertions at such a preliminary stage, it would have shut down a successful program that was doing no harm and was showing success in improving the academic achievement of students.[2] *Breckenridge* illustrates exactly why injunctions that disrupt the status quo are disfavored and why the burden on plaintiffs is so heavy, particularly after *Winter*.

**B.** **This Court cannot grant Plaintiffs a Preliminary Injunction because Plaintiffs cannot satisfy their Burden Under *Winter*.**

    **1.** **Because single-gender plans are not, *per se*, unconstitutional or in violation of federal law, Plaintiffs have not shown the likelihood that they will prevail on the merits.**

        **a.** ***Single-Gender Programs are not per se unconstitutional.***

Plaintiffs, their counsel the ACLU, and their expert witness Diane Halpern advance an argument that participation in single-gender education is per se harmful, and therefore is per se unconstitutional under the Equal Protection Clause of the Fourteenth Amendment. Yet, this argument is without any legal precedent. Both the United States Supreme

---

[2] In cases involving education policy, in particular, courts must be cautious before imposing an injunction that would terminate any educational program. Courts should defer to local school boards in matters of educational policy and should not attempt to dictate educational policy in absence of a clear finding of unconstitutionality. *See Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273, 108 S.Ct. 562 (1988) ("[T]he education of the Nation's youth is primarily the responsibility of parents, teachers, and state and local school officials, and not of federal judges."); *Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S.Ct. 266 (1968); *Freeman v. Pitts*, 503 U.S. 467, 490, 112 S.Ct. 1430 (1992) (quoting *Dayton Bd. of Educ. v. Brinkman*, 433 U.S. 406, 410, 97 S.Ct. 2766 (1977).

Court and the lower courts have consistently held that voluntary participation in single-gender educational programs is constitutionally permissible.

In ruling in favor of the school district, the District Court in Breckenridge explained that optional single-gender programs are not unconstitutional:

> **No legal authority supports the conclusion that optional single-sex programs in public schools are ipso facto injurious to the schools' students.** Unlike the separation of public school students by race, the separation of students by sex does not give rise to a finding of constitutional injury as a matter of law. . . The Supreme Court has never held that separating students by sex in a public school—unlike separating students by race—or offering a single-sex public institution is per se unconstitutional. See United States v. Virginia, 518 U.S. 515, 533 n. 7, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) ("We do not question [Virginia's] prerogative evenhandedly to support diverse educational opportunities [such as single-sex schools]."); Miss. Univ. for Women v. Hogan, 458 U.S. 718, 720 n. 1, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982) ("Mississippi maintains no other single-sex public university or college. Thus, we are not faced with the question of whether States can provide 'separate but equal' undergraduate institutions for male and females."). See also Vorchheimer v. Sch. Dist. of Philadelphia, 532 F.2d 880, 888 (3d Cir.1976), aff'd by an equally divided Court, 430 U.S. 703, 97 S.Ct. 1671, 51 L.Ed.2d 750 (1977)

*Breckinridge County Bd. of Educ*., 833 F. Supp. 2d at 678 (W.D. Ky. 2011)(citing *Brown v. Bd. of Educ. of Topeka*, 347 U.S. 483, 494, 74 S.Ct. 686, 98 L.Ed. 873 (1954))(emphasis added).

Indeed, the *United States v. Virginia,* 518 U.S. 515, 116 S.Ct. 2264 (1996) (sometimes referred to hereinafter as "*VMI*") decision is universally acknowledged as one that **preserves** the constitutionality of single-gender public schooling.  In a 7-1 opinion authored by Justice Ginsburg, the Court struck down VMI's all-male admission policy. What is critical about *VMI* is that Justice Ginsburg did not adopt the "separate but equal" position advanced by the ACLU. There is no mention of *Brown v. Board of Education* in the opinion, and no dicta that would preclude single-gender programs as a matter of law.  See generally *United States v. Virginia*, 518 U.S. 515, 533 n. 7, 116 S.Ct. 2264 (1996).   Rather, Ginsburg writes that

6

"[i]nherent differences between men and women...remain cause for celebration" but not for the denial of equal opportunity. See *United States v. Virginia*, 518 U.S. 515, 533, 116 S.Ct. 2264 (1996).  Accordingly, in the instant matter, any suggestion that single-gender classes are *per se* unconstitutional is simply not supported under existing law.

Courts must therefore examine these programs on a case-by-case basis. *VMI* held that a school district must demonstrate that its single gender programs are substantially related to an important government interest, and are supported by "an exceedingly persuasive justification." *Id*. at 534. The Court noted that diversity in educational opportunities, if applied evenhandedly to men and women, could constitute an important government objective, particularly those programs which seek to "dissipate, rather than perpetuate, gender classifications." *Id.* at 534 n. 7, 545–46.  Justice Ginsberg's point here is critical, as it inherently recognizes that the mere separation of the sexes in a classroom setting, in and of itself, does not perpetuate gender stereotyping; in fact, it supports that notion that, when administered appropriately, single gender classes can be a vehicle to eradicate fears, attitudes, and behaviors grounded in improper stereotyping.

Although Plaintiffs allege that Wood County's program is premised upon impermissible gender stereotypes, their complaint and accompanying evidence amount to nothing more than an editorial in opposition to Dr. Leonard Sax, David Chadwell, and the National Association of Single Sex Public Schools (NASSPE). The ACLU made similar arguments in *Breckenridge*, accusing the school of impermissible motives because it consulted with Chadwell and affiliated with NASSPE. *Plaintiff's First Amended Complaint* at 29 – 31, *A.N.A. ex rel. S.F.A. v. Breckinridge County Bd. of Educ*., 833 F.Supp.2d 673, (W.D. Ky. 2011)(No. ___). It also similarly cherry-picked statements by school administrators to give the

impression that the school had justified its program on suspect biological claims. *Id.* at 21. Yet, after discovery, its own expert, Dr. Patricia Campbell, was unable to find any evidence of gender-differentiated teaching alleged in the complaint. *Breckinridge*, 833 F.Supp.2d at 680 (W.D. Ky. 2011). This would suggest, in the instant matter, that assertions by the ACLU of discriminatory teaching should be looked at skeptically by this Court absent further discovery, and that individual statements for presentation by a school administrator about a specific method discussed among the myriad of pedagogical strategic considerations used should not suffice as enough evidence to meet Plaintiffs' burden under *Winter*.

Furthermore, this Court look skeptically upon the ACLU's "guilt-by-association" argument.  Investigating research, listening to speakers, and attending conferences does not suggest that the Wood County adopted any or all of the theories it might have been exposed to, and any finding to the contrary would place an unjustifiable burden on intellectual inquiry and academic freedom. The only way for this Court to determine if there is unconstitutional sex-stereotyping happening in Wood County is for experts to provide independent and unbiased observation and evaluation of the program.

Similar to *Breckenridge,* the stated justification for the Wood County program is to address an achievement gap between Van Devender students (both male and female) and county-wide averages. The program's stated vision was to "establish a high achieving school where males and females score at or above state averages on all achievement measures," and its "mission" was to "deliver a learning experience based on gender diversity." Van Devender Middle School, Presentation to the Wood County Board of Education (Undated, printed Mar. 9, 2010).  This is a legally permissible justification that is not based on any particular assumptions about innate biological differences, but simply recognizes, as did the Supreme Court in *VMI*, that

8

gender can be a salient factor in education. Thus, the Plaintiffs have not met their burden that they have a substantial likelihood of prevailing on the merits of their constitutional claim.

      **b.**    ***Single-Gender Programs are Permissible under Federal Law, including***

            i.    <u>Title IX and the OCR Regulation 34 C.F.R. § 106.34 (2006) confirms the Constitutionality of Single Gender Education.</u>

Contrary to Plaintiffs' assertions, Title IX does not prohibit single-gender education. Title IX of the Education Acts Amendments of 1972 mandates, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." Title IX, Education Acts Amendments of 1972, 20 U.S.C. § 1681(a). Plaintiffs' assertion that this language renders 34 C.F.R. § 106.34 (2006), and thus Wood County's single-gender offering, illegal is without support in law or legislative history, and is in direct opposition to Congress's clear intent to allows voluntary single-gender programs that comply with the parameters set forth in *VMI*.

Title IX's drafters granted the statute broad language, suggesting that Congress left it to the administrative agency, now the Department of Education, Office of Civil Rights, to be the vehicle for providing specific guidelines for compliance with Title IX. 20 U.S.C. §§ 1681-1688 (2000 & Supp. III 2003); *Grove City Coll. v. Bell*, 465 U.S. 555, 567, 104 S.Ct. 1211 (1984) ("The contemporaneous legislative history, in short, provides no basis for believing that Title IX's broad language is somehow inconsistent with Congress' underlying intent."); *N. Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 521, 102 S.Ct. 1912 (1982) ("There is no doubt that 'if we are to give [Title IX] the scope that its origins dictate, we must accord it a sweep as broad as its language." (quoting *United States v. Price*, 383 U.S. 787, 801, 86 S.Ct. 1152 (1966)).

4669003.1

The first regulations implementing Title IX were passed in 1975, and were not again amended until the 2006 regulation at issue in this case. The current amendments to Title IX regulations are a result of The No Child Left Behind Act of 2001 (NCLB). Senators Hillary Clinton and Kay Bailey Hutchinson offered this amendment, which was unanimously approved by the Senate.  *See* 20 U.S.C. § 7215(a)(23) (2006).  The legislative history suggests that both senators supported more school choice options,[3] and were supportive of single-gender education.[4]

The administrative interpretation may only be struck down when it is "arbitrary, capricious, or manifestly contrary to the statute." *INS v. Cardoza Fonseca*, 480 U.S. 421, 444 n. 29, 107 S.Ct. 1207 (1987). The Supreme Court affirmed the test for arbitrariness stating:

> [a]n agency's decision will be considered arbitrary only if it] has relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*National Ass'n v. Defenders of Wildlife*, 551 U.S. 644, 658, 127 S.Ct. 2518 (2007).

Careful analysis of comments provided in DOE's proposed (2002) and final (2004) rules reinterpreting Title IX reveal considerable review of Congress's intent and the meaning of the statute itself.  *See* 69 Fed. Reg. 11, 276 (March 9, 2004); *see also* 71 Fed. Reg. 62,530 (October 25, 2006).  DOE describes in great detail how the proposed amendments "reflect our analysis of the Title IX statute, its legislative history . . . and relevant case law" in its

---

[3] *See* 147 Cong. Rec. S5943 (daily ed. June 7, 2001) (statement of Sen. Kay Bailey Hutchinson) ("We are trying to open more options to public school than are available in private school because we want public schools to be able to tailor their programs to what best fits the needs of students in that particular area."); *Id.* (statement of Sen. Clinton) ("I believe public school choice should be expanded and as broadly as possible.").

[4] *Id.* (noting favorably The Young Women's Leadership School in East Harlem).

"Overview" of the proposed amendments. *Id.* Numerous recent and relevant studies and perspectives led DOE to conclude that "additional flexibility in providing single-sex educational options is warranted" and "will not compromise equal educational opportunities for male and female students" and "will not compromise equal educational opportunities for male and female students." *Id.*

Plaintiffs' main argument is that there is not sufficient social science data to show that single-gender education offers greater benefits than co-education. However, DOE had the vast majority of this data available to it when it promulgated the regulation. In its final regulation, DOE makes no claims to the superiority or effectiveness of single-gender education. Rather, in comments responding to research, DOE explains:

> Some commenters recommended that the Department postpone amendment of the regulations. Among the comments were recommendations that we wait until pilot projects were conducted, until completion of a Department-commissioned study on single-sex schools, or until the completion of additional scientific research that concludes that single-sex education is beneficial to students.
>
> Discussion: Title IX has always permitted single-sex schools under conditions that ensure nondiscrimination. **Existing educational research suggests that single-sex education may provide benefits to some students under certain circumstances.** For an overview of the literature assessing single-sex schools, see Single Sex Versus Coeducational Schooling: A Systematic Review, U.S. Department of Education, Office of Planning, Evaluation and Policy Development, 2005, available on the Department's Web site. Although there is a debate among educators on the effectiveness of single-sex education, the final regulations permit each recipient to make an individualized decision about whether single-sex educational opportunities will achieve the recipient's important objective and whether the single-sex nature of those opportunities is substantially related to achievement of that important objective consistent with the nondiscrimination requirements of these regulations.

*Nondiscrimination on the Basis of Sex in Education Programs or Activities receiving Federal Financial Assistance*, 71 Fed. Reg.  62, 530-01 (Oct. 25, 2006)(emphasis added).

The agency had ample evidence that single-gender classes can be effective for some children, and was faced with little to no evidence that it could cause harm. The assertion that single-gender education can be beneficial to some students has also been clearly and unequivocally affirmed by the United States Supreme Court in *VMI.*

Plaintiffs' argument suggests that federal agencies must have scientific certainty before promulgating a regulation.  Yet, the law only requires that the agency be reasonable in its interpretation of data in the face of scientific uncertainly. It is completely reasonable that some parents might find single-gender education either academically or socially beneficial for their children. Congress and DOE are entitled to make a policy choice, allowing for limited single gender classes that are otherwise non-discriminatory.  Plaintiffs lost this political battle despite having had ample opportunity to present contrary evidence.  A court must defer to a reasonable agency interpretation; otherwise it is would be engaged in its own policy determination as to the political acceptability of single-gender classes.

The administrative regulations that accompany Title IX must enjoy great deference by this Court.  Given that allowing for the limited use of single-gender for well-defined government objectives and only when done in a voluntary and even-handed manner is not arbitrary, capricious, or manifestly contrary to either the language or spirit of Title IX, the Plaintiffs have failed to meet their burden under *Winter.*

      ii.    U.S. Department of Health and Human Services Regulations confirms the Constitutionality of Single Gender Education.

Plaintiffs allege that the U.S. Department of Health and Human Services rules prohibit single-gender classes, citing that U.S. Department of Agriculture rules prohibit the USDA from funding schools that institute single-gender classes. Case law and precedent dictate that Plaintiffs' argument is again without merit, and that this Court should interpret the language of 7 C.F.R § 15a.34 and 45 C.F.R. § 86.64 consistent with 34 C.F.R. § 106.34.

In 2006, when the DOE promulgated 34 C.F.R. § 106.34, clarifying the regulation of single-gender education in public elementary and secondary schools under Title IX, neither the USDA nor HHS issued new rules so that all regulations at all agencies would be consistent. Thus, Plaintiffs correctly assert that the USDA and HHS rules do differ in language from DOE's regulation 34 C.F.R. § 106.34, but only in that 34 C.F.R. § 106.34 uses the exact same language as the HHS and USDA regulation but then adds subsection (b), which adds new exceptions to the general prohibition of single-sex classes.[5]

---

[5] When Congress passed Title IX, it authorized and directed "each Federal department and agency which is empowered to extend Federal financial assistance to any educational program or activity . . . to effectuate the provisions of section 1681." *See* 20 U.S.C. § 1682. Accordingly, in 1975, the Department of Health, Education and Welfare (HEW) [now the Department of Education (DOE)], promulgated regulations that were approved by Congress and subsequently codified at 45 C.F.R. § 86.34. In 1980, the newly created Department of Education (DOE) recodified the regulations at 34 C.F.R. § 106.34. This rule, subtitled "Discrimination on the Basis of Sex in Education Programs or Activities Prohibited," prohibits recipients of federal funds from discriminating on the basis of sex and provides a list of exceptions based specifically on course offerings. This was the only federal regulation to delineate when a single-gender class would be in compliance Title IX until DOE promulgated 34 C.F.R. § 106.34 in 2006.

In 1979, the Department of Agriculture (USDA) also promulgated a rule "prohibit[ing] (with certain exceptions) sex discrimination in federally assisted education programs and activities." *Education Programs or Activities Receiving Federal Assistance; Nondiscrimination of the Basis of Sex*, 44 Fed. Reg. 21,607 (April 11, 1979) (to be codified at 7 C.F.R. pt. 15a). This rule required recipients of federal funds distributed by USDA to fully comply with Title IX and is identical in language to 45 C.F.R. § 86.34. *Id.* When the USDA first issued regulations to effectuate the purpose of Title IX, it sought to "avoid unnecessary burdens on the public that can result from inconsistent or duplicative requirements from the regulations of more than one Department or agency." *Id.* Its final rule included a general comment specifically noting its intention to "be consistent with Title IX rules issued by the Department of Health, Education and Welfare (HEW)." *Id.* It declined to incorporate HEW's regulations by reference to spare affected parties the trouble of referencing to two documents. *Id.* USDA's responses to comments regarding consistency in interpretation repeatedly affirm its intent to defer to HEW, and now DOE, concerning Title IX implementation and compliance. *Id.*

**Also in 1979, the Department of Education Organization Act established the Department of Education and subsequently transferred oversight of Title IX from HEW to the Office of Civil Rights in**

13

However, Plaintiffs use this inconsistency to incorrectly assert that the court should give deference to the older rules and that their existence is evidence that 34 C.F.R. § 106.34 is an arbitrary and capricious interpretation of Title IX.  The court must interpret the language of the USDA and HHS rules to be consistent with DOE's interpretation of Title IX.  Title IX's legislative history clearly demonstrates Congress's intent to grant authority to DOE to enforce, interpret and implement rules that give it effect.  Even if USDA and HHS offer different language implementing the statute, a court should defer to DOE, and its interpretation, when a party seeks enforcement.

Plaintiffs ignore the basic rules of statutory construction.  If two or more rules seemingly conflict, then the law that is more recent should prevail.  Watt v. Alaska, 451 U.S. 259, 266, 101 S.Ct. 1673 (1981). In addition, specific rules, like 34 C.F.R. § 106.34, which provides a more exhaustive list of exceptions and requirements for single-gender education, trump general ones. Furthermore, if an administrative rule conflicts with an unambiguous statute or a clear expression of legislative intent, the rule is invalid.  Diersen v. Chicago Car Exchange, 110 F.3d 481 (7th Cir. 1997). In this case, Congress clearly intended for there to be increased opportunity for school districts to offer single-gender education options, and, in doing so, ordered DOE to promulgate a new rule to clarify when single-gender classes would be allowed under Title IX. Office of Civil Rights: Single-Sex Classes and Schools: Guidelines on Title IX Requirements, 67 Fed. Reg. 31,102 (May 8, 2002).

**2.** **Because both the Constitution and federal law require single-gender programs to be evaluated on a case-by-case basis, this Court must be**

---

**DOE.** *See* Department of Education Organization Act of 1979, Pub. L. 96-98 (Oct. 17, 1979)(Emphasis supplied). The newly restructured Department of Health and Human Services (HHS) retained HEW's regulation effecting Title IX and single-gender education. 45 C.F.R. § 86.34.  So too did the USDA. Both rules remain in effect today, unchanged from their original form.

**satisfied that Plaintiffs have standing to proceed before granting an injunction.**

As a threshold matter, this Court must be satisfied the Plaintiffs have standing and that Plaintiffs must prove an individualized, particularized harm before this Honorable Court can impose any remedy. Under Article III of the Constitution of the United States, federal courts have jurisdiction only over "actual cases or controversies." *Koger v. U.S.,* 755 F.2d 1094, 1096 (4th Cir. 1985); *see also* U.S. CONST. art. III, § 2. The power granted to this court by Article III "is not an unconditioned authority to determine the constitutionality of legislative or executive acts. The power to declare the rights of individuals and to measure the authority of governments ... 'is legitimate only in the last resort, and as a necessity in the determination of real, earnest, and vital controversy.' " *Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.,* 454 U.S. 464, 471, 102 S.Ct. 752 (1982).

In order for a case to fall within Article III's jurisdictional grant, the party bringing it must have standing to do so. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130 (1992).  To establish standing, a plaintiff must satisfy three elements.  First, the plaintiff must show an injury in fact, which is an invasion of a legally protected interest that is both "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical.' " *Id.* (citations omitted).  Second, the plaintiff must show a causal connection between the injury and the conduct complained of.  *Id.*  Finally, the plaintiff must show that it is "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."  *Id.* at 561, 112 S.Ct. 2130 (citations omitted).  The plaintiff may not rest on "mere allegations," but must set forth "specific facts" demonstrating that the elements of standing have been met. *Id.*

Plaintiffs allege three harms in their complaint:  first, that they were subjected to teaching based on gender-stereotyping; second, that their substantially equal co-educational

4669003.1

opportunity did not exist; and third, that their participation was not voluntary. These are all factual allegations that defendants dispute. This Honorable Court ought to be aware that similar claims were made by counsel ACLU in *Breckenridge.* Yet, the District Court found, "the plaintiffs fail to identify any facts showing that any educational opportunity was offered exclusively to boys, exclusively to girls, or exclusively to coeducational classes." *Breckinridge*, 833 F.Supp.2d at 680 (W.D. Ky. 2011).

The same concerns over standing hold true for this Court when deciding the question of whether to override Congressional intent and strike down the Department of Education's interpretation of Title IX relative to the offering of a single-gender option in public schools. *See Equity in Athletics, Inc. v. Department of Educ.*, 675 F.Supp.2d 660 (W.D.Va. 2009)(dismissing a Title IX claim for lack of standing because Plaintiffs failed to assert specific harm based on the asserted claim) (citing *Blum v. Yaretsky,* 457 U.S. 991, 999, 102 S.Ct. 2777 (1982)). To the extent that Plaintiffs allege that they were subjected to teaching methods based on stereotypes, that is a factual question requires further evidence than the allegations of a middle school students about what happened in their class. As discussed above, the court's experience in *Breckenridge* dictates caution when relying the assertions alleged in the complaint.

3.      **Because plaintiffs may attend co-educational classes, they cannot demonstrate irreparable harm; therefore, not only must their request for preliminary injunction be denied, but their claims are moot.**

As discussed above, *Winter* requires that the plaintiff make a clear showing that it is likely to be irreparably harmed. Plaintiffs, however, clearly cannot show irreparable harm. Plaintiffs have always had the choice to attend single gender or co-educational classes, and may select co-education classes for the upcoming school year. Given that Plaintiffs argue that single-gender classes are the source of their "harms," attending co-educational classes

for the 2012/2013 school year will render moot that harm.  While it is clear that Plaintiffs and the ACLU oppose single-gender education as a matter of public policy, litigation is intended only to vindicate the individual rights of plaintiffs, not dictate broader social policy.  Thus, this Court cannot grant an injunction if Plaintiffs choose to attend substantially co-educational classes.

Furthermore, it is arguable that Plaintiffs claims are now moot, and thus are suffering no current harm at all.  Article III of the United States Constitution limits this court's jurisdiction to actual, ongoing cases or controversies."  *Bd. of Educ. of Downers Grove Grade Sch. Dist. No. 58 v. Steven L .,* 89 F.3d 464, 467 (7th Cir.1996) (citing U.S. Const. art. III, § 2 and *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 477–78, 110 S.Ct. 1249 (1990)).  This requirement "subsists through all stages of federal judicial proceedings," and not just when the complaint is filed.  *Lewis,* 494 U.S. at 477 (1990). "A case becomes moot when a court's decision can no longer affect the rights of litigants in the case before them and simply would be 'an opinion advising what the law would be upon a hypothetical state of facts."  *Brown v. Bartholomew Consol. Sch. Corp.,* 442 F.3d 588, 596 (7th Cir.2006) (quoting *North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, (1971)).  Absent an actual live controversy, a case is moot and must be dismissed as nonjusticiable.

C.    **If this Court finds evidence that Wood County is not in full compliance with the Constitution or 34 C.F.R. § 106.34 (2006), then it should allow Wood County to remediate any issues rather than eliminate the program as doing so would be contravene the intent of Title IX, disrupt the balance of equities, and shock the public interest.**

*Winter* requires that this Court consider both the balance of equities and the public interest in determining whether an injunction is appropriate. *Winter* 555 U.S. at 20 (2008). As in *Breckenridge*, despite plaintiffs request for an injunction, the more appropriate and prudent course of action would be for this Honorable Court to allow full discovery to proceed. Given that

17

school has begun, this would allow the least amount of disruption for returning students and their families.

As an AYP school under No Child Left Behind Act of 2001, 20 U.S.C. § 6301, et seq., Van Devender has been marked as a school that has failed to meet expectations set by the Federal Government.  This unfortunate "distinction" has caused the exodus of students from Van Devender's ranks in previous years, and has forced Van Devender to investigate, develop, and implement innovative teaching techniques.  Yet, since the implementation of the single-gender program two years ago, there has been marked improvement in the attitude of both students and teachers and initial progress in academic achievement.  Were the Court to enjoin this program, there would likely be a great deal of chaos and uncertainty about the future of the school that would most certainly be detrimental to the entire school community.  As stated earlier, injunctions that disrupt the school year are particularly disfavored in this Circuit.  *Singleton v. Anson County Bd. of Ed.,* 387 F.2d 349 (4th Cir. 1967) (noting in a school desegregation case, that in view of exceedingly complex fact situation and an ongoing school year, "piecemeal vindication of plaintiff's civil rights by way of preliminary injunction was inappropriate").

Furthermore, in comparison to *Breckendridge,* Plaintiffs have even a less compelling argument that the Court should grant an injunction at this very early stage in the proceedings. Breckinridge County's single-gender program initially ran afoul of 34 C.F.R. 106.34 (b)(iv) by failing to allow students the choice to attend co-educational classes. However, instead of terminating the entire single-sex program, the District Court permitted to the school district to continue its program pending further evaluation.

The action by the District Court in Kentucky is consistent, in many respects, with the provisions of Title IX which permit remediation where issues are presented to the

4669003.1

Department of Education, Office of Civil Rights, which preferences remediation over an injunction when there is an alleged violation of Title IX. *See* 34 C.F.R. § 106.3(a)

   Similarly, this regulation lends support to defendant's position that this Honorable Court allow Wood County to institute a new single gender plan for 2012 - 2013, and in doing so, remedy any alleged discrimination or noncompliance with the regulations.  Federal law prefers that educational programs and activities continue in a non-discriminatory fashion rather than being entirely eliminated.  This, coupled with the extremely heavy burden on Plaintiffs under *Winter*' request for an injunction.

19

## IV.    CONCLUSION

Defendants therefore request that Plaintiffs' Motion for An Injunction be denied as they have failed to meet their burden under *Winter*, and that this Court allow Defendants to continue offering parents a single-gender option at Van Devender Middle School.

<div style="margin-left:50%">

*/s/ Aaron C. Boone*
Robert J. Kent (5010)
Aaron C. Boone (9479),
Counsel for Defendants
Bowles Rice LLP
Fifth Floor, United Square
501 Avery Street, Post Office Box 49
Parkersburg, West Virginia  26102
(304) 420-5504
rkent@bowlesrice.com
aboone@bowlesrice.com

</div>

4669003.1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

JANE DOE, individually and as
next friend to her minor daughters,
ANNE DOE, BETH DOE and
CAROL DOE,

      Plaintiffs,

vs.

                                                  CASE NO. 6:12-cv-04355
                                                  JUDGE GOODWIN

WOOD COUNTY BOARD OF EDUCATION,
J. PATRICK LAW, Superintendent, in his Official
Capacity, STEPHEN TAYLOR, Principal,
Van Devender Middle School, in his Official and
Individual Capacity, and PENNY TONELLI COLEMAN,
Former Assistant Principal of Van Devender Middle School,
in her Individual Capacity,

      Defendants.

**CERTIFICATE OF SERVICE**

        I hereby certify that on August 27, 2012, I served the foregoing and hereto annexed **DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION FOR PERMANENT INJUNCTION** upon counsel of record by email transmission and by depositing the same in the United States Mail, postage prepaid, addressed to:

Roger D. Forman, Esquire
Law Offices of Roger D. Forman LC
100 Capitol Street, Suite 400
Charleston, WV  25301
rdf@citynet.net

4669003.1

Christina Brandt-Young, Esquire
Amy Lynn Katz, Esquire
Lenora M. Lapidus, Esquire
Galen Sherwin, Esquire
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Women's Rights Project
18th Floor
125 Broad Street
New York, NY 10004
wrp_cby@aclu.org
wrp_ak@aclu.org
LLapidus@aclu.org
gsherwin@aclu.org

Marissa P. Harris, Esquire
Joshua A. Hartman, Esquire
Roxann E. Henry, Esquire
MORRISON & FOERSTER
Suite 6000
2000 Pennsylvania Avenue, NW
Washington, DC 20006
MHarris@mofo.com
JHartman@mofo.com
RHenry@mofo.com

Sarah Rogers, Esquire
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF WEST VIRGINIA
P. O. Box 3952
Charleston, WV 25339-3952
srogers@acluwv.org


      The undersigned further certifies that this Certificate of Service was filed using

the CM/ECF system, which will send notification of such filing to the following:


Roger D. Forman, Esquire
Christina Brandt-Young, Esquire
Amy Lynn Katz, Esquire
Lenora M. Lapidus, Esquire
Marissa P. Harris, Esquire
Joshua A. Hartman, Esquire
Roxann E. Henry, Esquire
Sarah Rogers, Esquire

                */s/ Aaron C. Boone*
                Aaron C. Boone