IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG DIVISION

JANE DOE, et al.,

                Plaintiffs,

v.                                      CIVIL ACTION NO. 6:12-cv-04355

WOOD COUNTY BOARD OF
EDUCATION, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the plaintiffs' motion for preliminary injunction [Docket 4]. A hearing was held on August 27, 2012. The court holds today that the option to opt out of a single-sex education program does not satisfy the requirement under the 2006 United States Department of Education regulations that single-sex programs be "completely voluntary." 34 C.F.R. § 106.34(b)(1)(iii). However, the court also finds that the preliminary relief requested by the plaintiffs is overly broad. Accordingly and for the reasons set forth below, the court **GRANTS in part** and **DENIES in part** the plaintiffs' motion for preliminary injunction.

I.      **Background and Procedural History**

This case arises from the single-sex program adopted by Van Devender Middle School ("VDMS") in a commendable attempt to improve the education of its students. The plaintiffs are a mother, Jane Doe, and her three daughters, Anne Doe, Beth Doe, and Carol Doe.[1] The daughters all attended the sixth grade at VDMS for the 2011-12 school year, and are currently attending the seventh grade for the 2012-13 school year. Defendant Wood County Board of

---

[1] The plaintiffs are proceeding under pseudonym.

Education ("WCBE") is the entity responsible for the administration of public schools within Wood County, West Virginia, including VDMS, and has overseen and approved the implementation of sex-separated classes at VDMS. Defendant J. Patrick Law is the superintendent of the Wood County Schools, and is responsible for the administration of all schools within the Wood County School District, including VDMS. Defendants Stephen Taylor and Penny Coleman are the Principal and Vice Principal, respectively, of VDMS, and have both overseen and implemented the sex-separated classes at VDMS.

VDMS is one of five public middle schools in Parkersburg, West Virginia. Students from grades six through eight are assigned to middle schools by WCBE based on the location of their residence. In 2010, the WCBE approved the single-sex education program at VDMS. The program was adopted for sixth grade classes in the 2010-11 school year, expanded to the seventh grade in 2011-12, and expanded to the eighth grade for the 2012-13 school year. Classes for reading, math, social studies, and science are separated by gender, while classes in other subjects are coeducational.

In May 2012, the American Civil Liberties Union sent a letter to J. Patrick Law of the WCBE regarding its opinion that the single-sex program at VDMS violates the Constitution and Title IX. In July 2012, the ACLU followed up on the letter, stating its intention to bring suit on behalf of the plaintiffs. On August 15, 2012, the plaintiffs filed this action alleging that the single-sex classes at VDMS violated the Equal Protection Clause of the Fourteenth Amendment and Title IX, 20 U.S.C. § 1681, as interpreted by the United States Department of Agriculture and Department of Education in their respective regulations, 7 C.F.R. § 15a.34 and 34 C.F.R. § 106.34. On the same day, the plaintiffs filed a Motion for a Temporary Restraining Order and Preliminary Injunction.

On August 19, 2012, the court held a hearing on the motion for a temporary restraining order. During that hearing, significant questions were raised regarding whether the single-sex classes at VDMS were voluntary, and whether substantially equal coeducational classes were offered at the school. The court denied the plaintiffs' motion for a temporary restraining order, holding that the plaintiffs had not made a "clear showing" that they were likely to succeed on the merits. The court noted that the issues of voluntariness and substantial equality needed further development. The court also held that the public interest would not be furthered by granting a temporary restraining order at the time due to the disruption that it would cause to the students at VDMS if the school was forced to make a last-minute shift to coeducational classes. However, the court further noted that:

> If the record developed [at the August 27, 2012 preliminary injunction hearing] shows that the plaintiffs are in fact likely to succeed on the merits, the Constitution and civil rights law will require [the altering of VDMS's scheduling to make it coeducational]. Teachers and schools should be innovative, and should be encouraged to experiment in their attempts to improve the education; however, they must do so within the lines drawn by the Constitution and by the law.

[Docket 24, at 2.] On August 27, 2012, the court held a hearing on the instant motion for preliminary injunction.

## II.     Preliminary Injunction

The United States Supreme Court and the United States Court of Appeals for the Fourth Circuit have provided district courts with a precise analytical framework for determining whether to grant preliminary relief. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 346-47 (4th Cir. 2009), *vacated on other grounds*, 130 S.Ct. 2371 (2010). First, the plaintiffs must make a clear showing that they will likely succeed on the merits. *The Real Truth About Obama, Inc.*, 575 F.3d at 346. Second, the plaintiffs must make a clear showing that they are likely to be irreparably harmed absent

3

preliminary relief. *Id.* Third, the plaintiffs must show that the balance of equities tips in their favor. *Id.* Finally, the plaintiffs must show that an injunction is in the public interest. *Id.* All four requirements must be satisfied. *Id.*

### A. Likelihood of Success on the Merits

The plaintiffs assert that the single-sex classes at VDMS violate the Equal Protection Clause of the Fourteenth Amendment and Title IX, 20 U.S.C. § 1681. In 2006, the United States Department of Education ("Department of Education") issued regulations authorizing public schools to offer single-sex education options under certain, specific conditions:

> (i) Each single-sex class or extracurricular activity is based on the recipient's important objective—
> > (A) To improve educational achievement of its students, through a recipient's overall established policy to provide diverse educational opportunities, provided that the single-sex nature of the class or extracurricular activity is substantially related to achieving that objective; or
> > (B) To meet the particular, identified educational needs of its students, provided that the single-sex nature of the class or extracurricular activity is substantially related to achieving that objective;
> (ii) The recipient implements its objective in an evenhanded manner;
> (iii) Student enrollment in a single-sex class or extracurricular activity is *completely voluntary*; and
> (iv) The recipient provides to all other students, including students of the excluded sex, a substantially equal coeducational class or extracurricular activity in the same subject or activity.

34 C.F.R. §§ 106.34(b)(1)(i)-(iv) (emphasis added).[2] Moreover, the regulations provide several factors that the Department considers when determining whether classes or extracurricular activities are substantially equal. 34 C.F.R. § 106.34(b)(3). Finally, the regulations provide for periodic evaluations by the school every two years "to ensure that single-sex classes or extracurricular activities are based upon genuine justifications and do not rely on overly broad

---

[2] The language in the regulations refers to "the recipient," which is "any educational program or activity receiving Federal financial assistance" in Title IX. 20 U.S.C. § 1681. The WCBE and its schools, including VDMS, receive federal funds from, *inter alia*, the Department of Education, and are thus recipients subject to the Department of Education regulations.

generalizations about the different talents, capacities, or preferences of either sex." 34 C.F.R. § 106.34(b)(4). The Department of Education regulations thus establish some authority permitting a narrow exception to the general rule of coeducation, to allow schools to experiment with single-sex programs to improve educational achievement. *See Doe ex rel. Doe v. Vermilion Parish Sch. Bd.*, 421 F. App'x 366, 369 (5th Cir. 2011) ("The Department of Education and the Department of Justice have filed an amicus brief . . . describing these regulations as permitting a narrow exception to the general rule of coeducation."). The language in these regulations closely tracks the legal standards established by the United States Supreme Court in *United States v. Virginia*, 518 U.S. 515 (1996).

> **i.    The Plaintiffs are Likely to Succeed on Their Title IX Claim Because Requiring Parents to Opt Out of Single-Sex Classes does not Make the Program Completely Voluntary. Rather, Affirmative Assent by the Parents is Required.**

The Department of Education did not define the phrase "completely voluntary" when it adopted the 2006 regulations. However, the discussion leading up to the adoption of the regulation, particularly subsection (iii), provides some insight on the meaning of the phrase. The discussion first states that:

> The proposed regulations in § 106.34(b)(1)(ii) were intended to require recipients to offer single-sex classes only on a completely voluntary basis, by requiring a recipient to provide a coeducational class in the same subject, in conjunction with the requirement in § 106.34(a) that a recipient may not require participation in classes on the basis of sex.

Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 71 Fed. Reg. 62530, 62537 (Oct. 25, 2006). The discussion then states:

> In order to ensure that participation in any single-sex class is completely voluntary, if a single-sex class is offered, the recipient is strongly encouraged to notify parents, guardians, and students about their option to enroll in either a single-sex or coeducational class *and receive authorization from parents or guardians to enroll their children in a single-sex class*.

5

*Id.* (emphasis added). The court holds today that the Department of Education regulations require an affirmative assent by parents or guardians before placing children in single-sex classrooms. Such affirmative assent would preferably come in the form of a written, signed agreement by the parent explicitly opting *into* a single-sex program. An opt-out provision is insufficient to meet the requirement that single-sex classes be "completely voluntary" for several reasons. First, the above discussion leading to the addition of the "completely voluntary" language strongly suggests that this outcome is proper. The regulations closely track the language of *United States v. Virginia*, yet the commentators and drafters ultimately felt the need to add an additional element of voluntariness, "clearly requiring that student participation in a single-sex class must be completely voluntary." 71 Fed. Reg. at 62537.

Moreover, because single-sex classes are, by their very nature, a gender classification, it makes perfect sense to require the parent or guardian's *clear and affirmative* assent. While a failure to opt out may be a legal substitute for agreement in some other areas of the law, such as membership in class actions,[3] presuming that parents or guardians have enrolled their child in a single-sex class completely voluntarily because they failed to opt out would undermine the purpose of Title IX to prevent discrimination based on gender.

Finally, this reading of the Department of Education regulations is supported by the meaning of the word "voluntary." Black's Law Dictionary defines "voluntary" as "[d]one by design or intention." BLACK'S LAW DICTIONARY 1569 (7th ed. 1999). The first word in the definition, "done," indicates that the actor must do something—in other words, an affirmative act. The phrase "by design or intention" indicates that the actor must have decided upon the act

---

[3] *See, e.g.*, *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 ("We reject petitioner's contention that the Due Process Clause of the Fourteenth Amendment requires that absent plaintiffs affirmatively 'opt in' to the class, rather than be deemed members of the class if they do not 'opt out.'").

that was taken. In other words, the definition of the word "voluntary" suggests that one cannot be said to have agreed to something voluntarily if they have not taken an affirmative act to agree to it.

The evidence, even as presented by the defendants, shows that the single-sex program at VDMS was presented solely in an opt-out manner to parents and guardians of the children attending VDMS. Counsel for the defendants referenced the opt-out form sent to the parents via mail this year and the opt-out script sent to the parents via telephone this year. Cross-examination of Jane Doe focused in part on her ability to opt out. Direct examination of the defendant Stephen Taylor focused in part on the opt-out forms sent to parents for the 2010-11, 2011-12, and 2012-13 school years. The defense offered an exhibit entitled "Van Devender Middle School Opt-out form," which states, in part: "My signature on this form indicates that I am requesting that my child be placed *in a coed class.*" [Def. Ex. 6 (emphasis added).] At no point do the defendants dispute that the form of notice given to the parents was that of opting out, rather than opting in.

The court also finds significant the timing of the opt-out notices sent to the parents and guardians. The record reflects that letters suggesting that parents may opt out of the single-sex program, and the opt-out forms, were not made available to the parents and guardians until very close to the beginning of each school year. For the 2012-13 school year, the record establishes that a meeting was held on August 16, 2012 with a form giving parents the option to opt-out. A phone recording was sent to parents the night before school began, and a letter was sent on the day that school began on August 23, 2012. For the 2011-12 school year, the record shows that forms were mailed out on or about August 18, 2011, while the school year was scheduled to begin approximately a week later. Testimony from Carol Doe reveals that she had already made

the cheerleading team before any option to opt out was presented to the parents. The close proximity of the notices to the beginning of the school year, after students have already enrolled, suggest that their choice was not fully voluntary. As the record reflects, students opting out of single-sex classes would be sent to a different school if not enough students at VDMS opted to take a coeducational class.

The court does not decide the question of whether single-sex classes violate the Equal Protection Clause. Rather, the court finds, as discussed, that the defendants have not met their burden to ensure that single-sex classes at VDMS are "completely voluntary" under the Department of Education regulations. Thus, the court finds that the plaintiffs are likely to succeed on the merits of their Title IX claim.

> **B.     The Plaintiffs are Likely to Suffer Irreparable Harm Absent Preliminary Relief**

The court finds that the plaintiffs' continued participation in single-sex classes without having completely voluntarily chosen that option constitutes irreparable harm. Other courts have found that a violation of Title IX may constitute irreparable harm, and this court agrees. *See McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 301-02 n.25 (2d Cir. 2004); *Roberts v. Colo. State Bd. of Agric.*, 998 F.2d 824, 833 (10th Cir. 1993). Here, the plaintiffs have shown that their participation in single-sex classes was not completely voluntary, and having them remain in single-sex classes would be a continuing violation of Title IX. *See id.*

The court does recognize the conflicting testimony between the plaintiffs and Ms. Hahn, one of the teachers that testified for the defense. Ms. Hahn's testimony indicated that she did not engage in gender stereotyping, but instead taught her classes according to the individual needs of the children. The court does not suggest that teachers should teach in any particular way, and appreciates the teachers' attempts to find new ways to teach and engage their students. The court

emphasizes that the irreparable harm in this case is not the way the children at VDMS are taught—the court does not decide that issue—but rather the lack of a voluntary choice to participate in single-sex classes as required under the Department of Education regulations.

### C. The Balance of Equities Tips in the Plaintiffs' Favor

The court finds that the injury to the plaintiffs outweighs the harm to the defendants in granting a preliminary injunction. The defendants would suffer the administrative inconvenience of revising course schedules after the school year has already begun to provide for coeducational classes. This inconvenience will not be a great burden to the defendants. The Principal of VDMS, Stephen Taylor, testified during the August 18, 2012 hearing that the school already has a coeducational program ready to be implemented. Furthermore, the WCBE and VDMS certainly have the experience and ability to run coeducational classes, as they have done for years prior to the implementation of the single-sex program in 2010. On the other hand, absent a preliminary injunction, the plaintiffs would continue to suffer from their involuntary placement in single-sex classrooms. Moreover, the plaintiffs Anne Doe, Beth Doe, and Carol Doe will experience their middle school years only once during their life.

### D. The Public Interest Favors a Preliminary Injunction

The court finds that a preliminary injunction would be in the public interest. A preliminary injunction would prevent the continued violation of the plaintiffs' Title IX rights, and that of any other parent who may not have opted out, but would not have opted in if they were properly presented with that option. The public interest is certainly served by promoting compliance with Title IX. *See Barrett v. West Chester Univ. of Pa. of State Sys. of Higher Educ.*, No. 03-cv-4978, 2003 WL 22803477, at *15 (E.D. Pa. Nov. 12, 2003); *Cohen v. Brown Univ.*, 809 F. Supp. 978, 1001 (D.R.I. 1992).

The rationale behind a grant of a preliminary injunction has been explained as preserving the *status quo* so that the court can render a meaningful decision after a trial on the merits. *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991); *Feller v. Brock*, 802 F.2d 722, 727 (4th Cir. 1986). The status quo, however, does "not consist of a photographic replication of the circumstances existing at the moment suit was filed, but rather the last peaceable uncontested status that existed before the dispute arose." *Faulkner v. Jones*, 10 F.3d 226, 237-38 (4th Cir. 1993) (Hamilton, J. dissenting). Here, the court finds that the "last peaceable uncontested status" was when VDMS offered coeducational classrooms, particularly as coeducational education is still the general rule.

### III.     Scope of the Preliminary Injunction

The plaintiffs, in essence, take the position that no single-sex classes would ever withstand scrutiny under the Constitution or Title IX. The court finds this argument unpersuasive. Specifically, the court notes that:

> No legal authority supports the conclusion that optional single-sex programs in public schools are *ipso facto* injurious to the schools' students. Unlike the separation of public school students by race, the separation of students by sex does not give rise to a finding of constitutional injury as a matter of law.

*A.N.A. ex rel. S.F.A. v. Breckinridge Cnty. Bd. of Educ.*, 833 F. Supp. 2d 673, 678 (W.D. Ky. 2011). In fact, the United States Supreme Court has found exactly the opposite of what the plaintiffs suggest. *See United States v. Virginia*, 518 U.S. at 533 & n.7 (stating that "[t]he heightened review standard our precedent establishes does not make sex a proscribed classification," and not questioning Virginia's "prerogative evenhandedly to support diverse educational opportunities."). Rather, if the school meets the heightened scrutiny set forth in *United States v. Virginia*, single-sex classes can certainly be constitutional. Similarly, the Department of Education also disagrees with this view: the 2006 regulations explicitly allow for

10

a narrow exception to the general rule of coeducational classes, and schools can certainly avoid violating Title IX in implementing single-sex classes by complying with these regulations.

Based on this position, the plaintiffs ask for preliminary relief not only to enjoin the defendants from segregating VDMS based on sex, but also to enjoin the implementation of *any* gender-based training techniques at the school. The court is not willing to go this far. The court sees no reason to enjoin the defendants from implementing single-sex education programs and single-sex classrooms as long as they are acting within the boundaries set by the Constitution and Title IX; it is only to the extent that VDMS's current single-sex program violates the law that the defendants must be enjoined.

## IV.   Conclusion

The court again emphasizes that its decision today rests on the requirement of the Department of Education regulations that single-sex programs be "completely voluntary." 34 C.F.R. § 106.34(b)(1)(iii). The court does not substitute its judgment for that of local school administrators and teachers regarding the benefits or drawbacks of single-sex education. However, the court does note that the science behind single-sex education appears to be, at best, inconclusive, and certain gender-based teaching techniques based on stereotypes and lacking any scientific basis may very well be harmful to students. Even Professor Salomone, the expert witness called by the defense, agreed with the ACLU on the issue of brain research—that it's based on the rationale of pseudoscience—and suggested that many schools were "led astray" by the teachings of Dr. Leonard Sax. Professor Salomone served as an expert witness for the defense not because she agreed with the gender-based teaching techniques, but because she felt that the individual teachers at VDMS were, in fact, *not* teaching students based on gender stereotype, despite the training given by Dr. Sax and David Chadwell.

The court strongly believes that educators should be in charge of educating, and strongly encourages teachers and schools to adopt innovative learning techniques to improve our struggling education system. No one is better suited to develop effective teaching methods than our public school teachers. The teachers, through their underappreciated service in the classroom, are in the best position to determine what it takes to reach their students in ways that no laws or regulations can anticipate. It is admirable that the teachers at VDMS are attempting to find different ways to connect with their students.

Thus, the court does not wish to interfere with or stifle innovation in our education system. However, it is the court's duty to ensure that the government complies with the law. Without making any findings regarding the evidence heard on the merits of VDMS's single-sex classes, or single-sex curricula generally, the court finds that the requirements set forth by the Department of Education under Title IX that single-sex programs be "completely voluntary" means that there must be unequivocal assent to participation given by parents of all students involved. Lacking that assent, a student must have the "substantially equal" alternative promised by the regulations, although this court declines to define today what that alternative must entail.

Because the court **FINDS**, for the reasons stated above, that VDMS's program was not completely voluntary, the plaintiffs' motion for preliminary injunction [Docket 4] is **GRANTED in part and DENIED in part.** The court hereby **ENJOINS** the defendants from separating students into single-sex classes at Van Devender Middle School for the remainder of the 2012-13 school year, and unless and until any single-sex program offered meets the requirements of the Constitution and Title IX, in particular the Department of Education regulations as interpreted by the court today. This injunction will take effect at the beginning of the school day on Monday, September 3, 2012.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. The court further **DIRECTS** the Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

    ENTER:    August 29, 2012

_Joseph R. Goodwin_
Joseph R. Goodwin, Chief Judge