IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

JANE DOE, individually and as
next friend to her minor daughters,
ANNE DOE, BETH DOE and
CAROL DOE,

        Plaintiffs,

vs.                                                CASE NO. 6:12-cv-04355
                                                                JUDGE GOODWIN

WOOD COUNTY BOARD OF EDUCATION,
J. PATRICK LAW, Superintendent, in his Official
Capacity, STEPHEN TAYLOR, Principal,
Van Devender Middle School, in his Official and
Individual Capacity, and PENNY TONELLI COLEMAN,
Former Assistant Principal of Van Devender Middle School,
in her Individual Capacity,

        Defendants.

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants, by counsel, hereby move this Honorable Court to dismiss the Defendant Wood County Board of Education, in part, and to dismiss Defendants J. Patrick Law, Stephen Taylor, and Penny Tonelli Coleman, in their entirety, from this civil action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**I.    SUMMARY**

Plaintiffs claim that the Defendants violated Plaintiffs' right to equal protection, secured by 42 U.S.C. § 1983, under the United States Constitution (hereinafter sometimes referred to as "§1983 claim"). As stated in the Complaint, the sole basis for Plaintiffs' §1983 claim is that Single Sex Classes are, *per se*, unconstitutional. However, this Court ruled that Single Sex Classes are not, *per se*, unconstitutional. Therefore, Plaintiffs' §1983 claim against

the collective Defendants must be dismissed, thereby permitting only Plaintiffs' claim that the Wood County Board of Education violated Title IX to proceed.

Alternatively, if this Court is not inclined to dismiss Plaintiffs' entire §1983 claim against the collective Defendants, then Defendants respectfully request that this Court find that Plaintiffs' "individual capacity" claims are barred due to the doctrine of "qualified immunity," and that Plaintiffs' "official capacity" claims are barred since they are redundant to Plaintiffs' claims against the Wood County Board of Education.

Lastly, any claim for damages, if any such claim there be, against the individual Defendants is barred under the 11th Amendment.

## II. STATEMENT OF FACTS

Plaintiffs are a mother and her three daughters; the daughters are rising seventh graders at Van Devender Middle School ("Van Devender"), in Parkersburg, West Virginia. (Complaint, ¶ 2).

Defendants are the Wood County Board of Education; J. Patrick Law, Superintendent of Wood County Schools ("Superintendent Law"); Stephen Taylor, Principal of Van Devender ("Principal Taylor"); and Penny Tonelli Coleman, former Vice Principal of Van Devender ("former Vice Principal Coleman"). (Complaint, ¶¶ 15 - 17).

Plaintiffs sue Superintendent Law in his "official capacity". (Complaint, ¶15). Plaintiffs sue Principal Taylor in his "individual and official capacity". (Complaint, ¶16). Plaintiffs sue Vice Principal Coleman in her "individual capacity". (Complaint, ¶ 17).

Plaintiffs allege the following two causes of action: "First Cause of Action: Equal Protection" and "Second Cause of Action: Title IX, against WCBE". (Complaint, pp. 21 - 23).

As it relates to Plaintiffs' first cause of action, Plaintiffs allege that the Defendants violated Plaintiffs' right to equal protection of the laws, secured by 42 U. S. C. § 1983, by the Fourteenth Amendment to the United States Constitution ("§1983 claim"). (Complaint ¶ 99). Of great import, Plaintiffs' "First Cause of Action: Equal Protection" includes only the following paragraph as its basis:

> 99. By separating classes at Van Devender by sex, Defendants have intentionally classified students by sex and discriminated amongst them on the basis of sex in violation of Plaintiffs' right to equal protection of the laws, secured (pursuant to 42 U.S.C. § 1983) by the Fourteenth Amendment to the United States Constitution.

(Complaint, ¶ 99).

As it relates to Plaintiffs' second cause of action, Plaintiffs allege that only Defendant Wood County Board of Education ("Wood County") violated "Title IX." (Complaint, pp 22 - 23). To be clear, this second cause of action does not allege that Superintendent Law, Principal Taylor, and/or Vice Principal Coleman violated Title IX. (Complaint, pp 22 - 23)[1].

---

[1] Defendants note that Plaintiffs specifically exclude Superintendent Law, Principal Taylor, and Vice Principal Coleman from Plaintiffs' "Second Cause of Action: Title IX, against WCBE"; however, Defendants also note that Plaintiffs' Request for Relief asks the Court to find that "the actions of Defendants violate Plaintiffs' rights under (i) the Fourteenth Amendment of the United States Constitution and (ii) Title IX of the Education Amendment of 1972." (Complaint, Request for Relief, (3)." The inclusion of the word "Defendants" in the Request for Relief could be read to suggest that Plaintiffs seek to assert claims against the Defendants, collectively, under Title IX. However, the specific exclusion of the individual Defendants from "Second Cause of Action: Title IX, against WCBE" more reasonably suggests that Plaintiffs do not intend to assert Title IX claims against the individual Defendants. The later interpretation is not only more reasonable, but is also in concert with applicable law, as Title IX claims against individual defendants are "impossible." *Bracey v. Buchanan*, 55 F. Supp. 2d 416, 419 (E.D. Va. 1999)(see also, *Bess v. Kanawha County Bd. of Educ.*, CIV.A.2:08CV01020, 2009 WL 3062974 (S.D.W. Va. Sept.

### III. STANDARD OF LAW

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *S. W. Virginia Paving, Inc. v. Elmo Greer & Sons, LLC*, 691 F. Supp. 2d 677, 679 (S.D. W.Va. 2009). A plaintiff is, of course, bound to the allegations in his complaint when challenged by a motion to dismiss. *Conley v. Gibson*, 355 U.S. 41 (1957); *Revene v. Charles County Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989). Conclusions of law in the complaint, however, are entitled to no deference. *Revene*, 882 F.2d at 873.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do' . . . [n]or does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007)).

Qualified Immunity is an affirmative defense that must be raised by Defendants in an answer or a dismissal motion. See *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 305 (4th Cir. 2006)(emphasis added); see also *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Sales v. Grant,* 224 F.3d 293, 296 (4th Cir.2000).

> A defendant may first raise a qualified immunity defense at the
> pleadings stage in a motion to dismiss, and "unless the plaintiff's
> allegations state a claim of violation of clearly established law, a

---

17, 2009)(finding that "any personal-capacity actions against the individual defendants under the ADA or § 504 must be dismissed because the individual defendant is not subject to liability under those acts)).

> defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery"

*Sales v. Grant*, 224 F.3d 293, 301 (4th Cir.2000)(quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

IV. **ARGUMENT**

A. **Defendants maintain that this Court should dismiss the entirety of Plaintiffs' §1983 action in light of this Court's Memorandum Opinion and Order.**

Plaintiffs' "First Cause of Action: Equal Protection" alleges the following:

> 99. **By separating classes at Van Devender by sex**, Defendants have intentionally classified students by sex and discriminated amongst them on the basis of sex in violation of Plaintiffs' right to equal protection of the laws, secured (pursuant to 42 U.S.C. § 1983) by the Fourteenth Amendment to the United States Constitution.

(Complaint, ¶ 99)(emphasis added). In other words, the sole basis for Plaintiffs' §1983 claim is that the Defendants, "by separating the classes at Van Devender by sex", have classified and discriminated the students on the basis of sex. (Id). However, this Court ruled that separating students by sex does not give rise to a finding of constitutional injury as a matter of law.

> The plaintiffs, in essence, take the position that no single-sex classes would ever withstand scrutiny under the Constitution or Title IX. The court finds this argument unpersuasive. Specifically, the court notes that:
>
>> No legal authority supports the conclusion that optional single-sex programs in public schools are *ipso facto* injurious to the schools' students. Unlike the separation of public school students by race, the separation of students by sex does not give rise to a finding of constitutional injury as a matter of law.
>
> *A.N.A. ex rel. S.F.A. v. Breckinridge Cnty. Bd. of Educ.*, 833 F. Supp. 2d 673, 678 (W.D. Ky 2011). In fact, the United States Supreme Court has found exactly the opposite of what the plaintiffs suggest. *See United States v. Virginia*, 518 U.S. at 533 & n.7 (stating that "[t]he heightened review standard our precedent

5

> establishes does not make sex a proscribed classification," and not questioning Virginia's "prerogative evenhandedly to support diverse educational opportunities."). Rather, if the school meets the heightened scrutiny set forth in *United States v. Virginia*, single-sex classes can certainly be constitutional.

(Memorandum Opinion and Order, p. 10).

As this Court recognized, Plaintiffs take the position that no single-sex class could ever be constitutional. (Id). Defendants reiterate that Plaintiffs' sole allegation with respect to the basis for their First Cause of Action is that the classification of students by sex is unconstitutional. (Complaint, ¶99). Plaintiffs have alleged no further basis for their § 1983 Claim, and Plaintiffs are bound to the allegations in their complaint when challenged by a motion to dismiss. *Conley v. Gibson*, 355 U.S. 41 (1957); *Revene v. Charles County Commissioners*, 882 F.2d 870, 873 (4th Cir. 1989).

Accordingly, given that Plaintiffs' sole basis for their §1983 Claim is that single-sex classes are unconstitutional as a matter of law, and given this Court's finding that the separation of students by sex does not give rise to a finding of constitutional injury as a matter of law, Defendants maintain that Plaintiffs' §1983 Claims against the Defendants should be dismissed.

    **B.** **Even if this Court is not inclined to dismiss the entirety of Plaintiffs' §1983 action, Defendants maintain that Plaintiffs' §1983 action against the individually named Defendants be dismissed.**

Even if this Court is not inclined to dismiss the entirety of Plaintiffs' §1983 action against the Defendants collectively, this Court must still examine whether the §1983 claims may proceed against the individually named Defendants: Superintendent Law, Principal Taylor, and former Assistant Principal Coleman. As noted above, Plaintiffs assert §1983 claims against

Principal Taylor, and former Assistant Principal Coleman in their "Individual Capacity", and assert §1983 claims against Superintendent Law and Principal Taylor in their "Official Capacity". As discussed below, this Court should dismiss both the "Individual Capacity" claims and the "Official Capacity" claims.

> 1. <u>As it relates to Plaintiffs' §1983 action, Plaintiffs' Individual Capacity Claims against Principal Taylor and former-Vice Principal Coleman should be dismissed because the alleged violations were not "clearly established"; therefore, "Qualified Immunity" shields these Defendants from "Individual Capacity" claims</u>.

Plaintiffs sue Principal Taylor and former Vice-Principal Coleman in their "individual capacity" for violating Plaintiffs' Constitutional Rights in contravention of §1983. (See Complaint, ¶16 - 17). However, "qualified immunity" is a potential defense against these individual capacity claims:

> Qualified immunity shields government officials performing discretionary functions from personal-capacity liability for civil damages under § 1983, " 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' "

*Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006)(citing, *Wilson v. Layne*, 526 U.S. 603, 609 (1999); see also *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985).

Defendants Taylor and Coleman are entitled to "qualified immunity"[2] with respect to Plaintiffs' "Individual Capacity" claims unless Plaintiffs can satisfy the following two-prong test, known as the "qualified immunity test":

---

[2] In the instant matter, there should be no dispute that the Wood County Board of Education is a governmental entity, nor should there be any dispute that Defendants Taylor and Coleman are school administrators, employed by the Wood County Board of Education.

> Government officials are entitled to the defense of qualified immunity unless a § 1983 claim satisfies the following two-prong test (the "qualified immunity test"): (1) the allegations underlying the claim, if true, substantiate the violation of a federal statutory or constitutional right; and (2) this violation was of a "clearly established" right "of which a reasonable person would have known."

*Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006); see also *Mellen v. Bunting*, 327 F.3d 355, 365 (4th Cir.2003); *Hope v. Pelzer*, 536 U.S. 730, 736 (2002); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

Since Plaintiffs must prove both the first <u>and</u> second prong of the qualified immunity test, this Court may focus solely on the second prong, the "clearly established" element:

> The Supreme Court's decision in Pearson allows courts to grant qualified immunity without first deciding whether a violation occurred so long as the right claimed to be violated was not clearly established. Id. We find such analytic flexibility to be particularly appropriate here and focus our consideration on the clearly established prong

*Cole v. Buchanan County Sch. Bd.,* 328 F. App'x 204, 207 (4th Cir. 2009).

As it relates to the second prong of the qualified immunity test, the "clearly established" element, Defendants recognize that this Court is in a rather nuanced position, given this Court's recent Memorandum Opinion and Order; however, as discussed below, this Court's prior decision does not bar a finding of qualified immunity.

First, Defendants recognize that Plaintiffs allege, in their Complaint, that Defendants Coleman and Taylor, *inter alia,* "implemented the sex separation program at Van

8

Devender based on impermissible and inaccurate stereotypes." (See Complaint, ¶3)[3]. Second, Defendants recognize that this Court, without making any findings regarding the merits of Van Devender's single sex classes, noted in its recent Memorandum Opinion and Order that "certain gender-based techniques based on stereotypes and lacking any scientific bases may very well be harmful to students." (See Order, p. 12; Document 51).[4] Third, Defendants recognize that this Court found that Van Devender's "opt out" approach was not in concert with the "Completely Voluntary" requirement of the Department of Education's regulations. (See Order, p. 6; Document 51).

Notwithstanding the above, the issue of "qualified immunity" concerns the violation of a "clearly established" right, see *Ridpath*, 447 F.3d 292, 306; more specifically, it asks whether certain activity has been clearly identified such that a reasonable person would be on notice that such activity, if employed, would violate a constitutional right. In other words, regardless of the allegations in the Complaint or the findings in this Court's Memorandum Opinion and Order, the Defendants are still entitled to the shield of qualified immunity unless there existed clearly established legal parameters on how school administrators should develop and implement a single-sex education program.

---

[3] To be clear, Defendants maintain that allegations regarding *how* the single sex program was developed and implemented, such as Paragraph No. 3 of the Complaint, speak only to Plaintiffs' "Second Cause of Action: Title IX, against WCBE", and not to Plaintiffs' First Cause of Action, Plaintiffs' § 1983 Claim. As noted above, Defendants have moved to dismiss the entirety of Plaintiffs' §1983 Claim because the Complaint's stated rationale for said claim is that the mere separation of the sexes is, per se, unconstitutional. (Complaint ¶ 99). However, in the event the Court is not inclined to dismiss the entirety of Plaintiffs' §1983 Claim, Defendants will analyze whether issues pertaining to the "development and implementation" were "clearly established."

[4] Defendants also recognize that this Court noted that Ms. Hahn, one of Van Devender's teachers, "indicated that she did not engage in gender stereotyping, but instead taught her classes according to the individual needs of the children." (See Opinion and Order, Document 51).

In determining whether a constitutional right is "clearly established", the Fourth Circuit Court of Appeals indicates that a district court should conduct an examination of the body of law that pre-existed the complained-of activity:

> As the Court explained, a constitutional right is clearly established when "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope, 536 U.S. at 739, 122 S.Ct. 2508 (internal quotation marks omitted). That is, " 'in the light of pre-existing law the unlawfulness must be apparent,' " id. (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)), but "the very action in question [need not have] previously been held unlawful," id. (internal quotation marks omitted), because " 'general statements of the law are not inherently incapable of giving fair and clear warning, and ... a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question,' " id. at 741, 122 S.Ct. 2508 (quoting United States v. Lanier, 520 U.S. 259, 270-71, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)).

*Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 313 (4th Cir. 2006).

Judge Broadwater of the Northern District of West Virginia thoughtfully outlined one approach to this examination process:

> Once the Defendants have raised the defense of qualified immunity[:]
>
> The Plaintiff then has the burden to show with particularity facts and law establishing the inference that the Defendants violated a constitutional right. This burden is quite heavy, for the Plaintiffs must do more than simply allege the violation of a general legal precept. The Plaintiffs must instead demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited. The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. Only if the Plaintiffs makes that threshold showing does the burden shift to Defendants to show that no material facts remain in dispute that would defeat defendant's claim of qualified immunity.

*Pennington v. Teufel*, 396 F. Supp. 2d 715, 726 (N.D.W. Va. 2005), aff'd sub nom. *Pennington v. Tuefel*, 169 F. App'x 161 (4th Cir. 2006)(citing *Watson v. Univ. of Utah Med. Ctr.*, 75 F.3d 569 (10th Cir.1996).

Under Judge Broadwater's approach, since Defendants Taylor and Coleman have raised the defense of qualified immunity, the burden now shifts to Plaintiffs to establish that pre-existing law clearly established that Defendants' actions were "clearly prohibited" *Id*. Plaintiffs, however, cannot satisfy this burden; this is because, in part, there were only two published legal opinions prior to the filing of the instant matter that examined a school district's efforts to initiate single gender education. As discussed more fully below, neither decision established that any of the core activities alleged in the Complaint were "clearly prohibited."[5]

      a.    <u>The *Vermillion* decision does not establish that any of the core activities alleged in the Complaint were clearly prohibited.</u>

In *Vermillion*, the United States District Court for the Western District of Louisiana examined whether the Vermillion School District should be enjoined from continuing their Single-Gender Education Program. *See Doe ex rel. Doe v. Vermillion Parish School Bd.*, 421 Fed. Appx. 366 (2011). However, *Vermillion* focused on the differences between Vermillion's co-ed and single-sex classes, and focused on fraudulent test-score-data used to justify Vermillion's program. *Vermillion* 421 Fed. Appx. at 371. In fact, *Vermillion* avoided substantive discussions of the Department of Education's Regulations on Single Sex Education, 34 C.F.R. § 106.34(b)(1)(i)–(iv), choosing instead to simply affirm the existence of authority to proceed with single gender education programs:

---

[5] Defendants submit that the two decisions that existed prior to the filing of the instant matter are *A.N.A. ex rel. S.F.A. v. Breckinridge Cnty. Bd. of Educ.*, 833 F. Supp. 2d 673, 678 (W.D. Ky. 2011), and *Doe ex rel. Doe v. Vermillion Parish School Bd.*, 421 Fed Appx. 366, 269 Ed. Law. Rep. 89 (2011).

> These regulations provide some foundation for a public school's attempt to experiment with single-sex education. We express no view today on whether these regulations are contrary to Title IX, the Equal Protection Clause, or the other authorities Doe cites. At this stage, we note only that there is some currently-existing authority for a school to utilize same-sex programs to improve educational outcomes.

*Doe ex rel. Doe v. Vermilion Parish Sch. Bd.*, 421 F. App'x 366, 369-70 (5th Cir. 2011). As such, *Vermillion* did not touch on any of the allegations that are at the core of the instant matter, namely whether Defendants "implemented the sex separation program at Van Devender based on impermissible and inaccurate stereotypes" (see Complaint, ¶3).

Further, *Vermillion* demonstrates that the potential harms associated with the "opt-out" approach was not clearly established prior to the filing of the instant Complaint. The *Vermillion* opinion appears to specifically reference the use of the "opt out" approach, but fails to distinguish whether this approach is troublesome:

> Upon learning of these regulations, the Board attempted to confirm its program by making the single-sex classes voluntary. It provided consent forms to parents and asked them to mark whether they wanted single-sex or coed classes for their children.
>
> ...
>
> **Doe first sought to have both daughters opt out**. Her older daughter Joan remained in the single-sex class after Dupuis talked to Joan at school about her placement. The younger daughter, Jill, was transferred into a coed class at the time the complaint was filed.

*Doe ex rel. Doe v. Vermilion Parish Sch. Bd.*, 421 F. App'x 366, 370 (5th Cir. 2011). As noted above, the Court's conclusions appear to focus on the differences in co-ed and single-sex classes and on fraudulent test-score-data, and do not discuss the "opt out" approach. *Vermillion at p. 371.* One could argue that absence of any further discussion in *Vermillion* regarding the "opt

12

out" approach suggests tacit approval of the "opt out" approach. However, the issue is whether the unlawfulness is apparent, not whether it should be inferred or suspected:

> "[I]n the light of pre-existing law, the unlawfulness must be apparent." Anderson, 483 U.S. at 640, 107 S.Ct. 3034. A defense of qualified immunity, therefore, protects "all but the plainly incompetent or those who knowingly violate the law." Waterman v. Batton, 393 F.3d 471, 476 (4th Cir.2005) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)).

*Cole v. Buchanan County Sch. Bd.*, 328 Fed. Appx. 204, 208 (4th Cir. 2009). At a minimum, *Vermillion* demonstrates that the potentially troublesome nature of the "opt out" approach was not "clearly established" at the time Defendants engaged in this approach.

Accordingly, *Vermillion* does not provide clearly established warnings that would alert the Defendants against the activities alleged in Plaintiffs' Complaint.

        b.    <u>The *Breckinridge* decision does not establish that any of the core activities alleged in the Complaint were clearly prohibited.</u>

In *Breckinridge*, the United States District Court for the Western District of Kentucky examined whether the Breckinridge County School District's Single-Gender Education Program violated the Constitutional Rights of students. *A.N.A. ex rel. S.F.A. v. Breckinridge Cnty. Bd. of Educ.*, 833 F. Supp. 2d 673, 678 (W.D. Ky. 2011). However, *Breckinridge* focused the differences between Breckinridge County's co-ed and single-sex classes:

> Although both expert reports noted variations among (1) classroom management styles, (2) teaching methods used, and (3) the pace of progress through materials, both experts concluded:
>
> While there were differences among teachers, during the periods I observed there were no differences in the ways the single-sex and

> coed classes were conducted. The teachers used the same classroom set-up, the same text books, the same instructional strategies, and the same behavior management techniques for their coed and single-sex classes.
>
> Campbell (plaintiffs' expert) Report, DN 234–17 at 4.

*A.N.A. ex rel. S.F.A. v. Breckinridge County Bd. of Educ.*, 833 F. Supp. 2d 673, 680 (W.D. Ky. 2011). As such, *Breckinridge* did not address the core allegations in the instant complaint, namely that Defendants "implemented the sex separation program at Van Devender based on impermissible and inaccurate stereotypes". (Complaint, ¶ 3).

In fact, *Breckinridge* strongly affirms single sex education in our public schools. *A.N.A. ex rel. S.F.A. v. Breckinridge County Bd. of Educ.*, 833 F. Supp. 2d 673, 678 (W.D. Ky. 2011)(finding that "[t]he Supreme Court has never held that separating students by sex in a public school—unlike separating students by race—or offering a single-sex public institution is per se unconstitutional"). As such, *Breckinridge* did not provide "clearly established" warnings that would alert the Defendants against the activities alleged in Plaintiffs' Complaint.

Accordingly, as it relates to Plaintiffs' "individual capacity" claims against Principal Taylor and former Assistant Vice Principal Coleman, these Defendants are entitled to Qualified Immunity, and dismissal of said claims. [6]

    2.    **As it relates to Plaintiffs' §1983 action, Defendants maintain that the "Official Capacity" claims against Superintendent Law and Principal Taylor should be dismissed.**

---

[6] Defendants recognize that the style of the case, as listed in Plaintiffs' Complaint, indicates that only Principal Taylor and Former Assistant Principal Coleman are named in their "individual capacity"; however, the Prayer for Relief, as it relates to the alleged violations of the United States Constitution, references, generally, the "actions of Defendants" (Complaint, Request for Relief, ¶ (3)(ii). Therefore, to the extent Plaintiffs seek to allege violations of the United States Constitution against Superintendent Law in his "individual capacity", Defendants request, out of an abundance of caution, that said claim be dismissed along with the individual capacity claims against Principal Taylor and Former Assistant Principal Coleman.

14

Plaintiffs sue Superintendent Law and Principal Taylor in their "official capacities" for violating Plaintiffs' Constitutional Rights. (See Complaint, ¶¶16 - 17). However, since Plaintiffs also sue the Wood County Board of Education, Plaintiffs' "official capacity" claims against Superintendent Law and Principal Taylor are redundant.

The Sixth Circuit confirmed, in a §1983 action, that "official capacity claims" are redundant and should be dismissed, when the municipality is also a party:

> These defendants have also been sued in their official capacity. The Supreme Court has held that it is redundant to allege claims against both a municipality and against its officers in their official capacities, as the latter necessarily implicates the former. See *Kentucky v. Graham*, 473 U.S. 159, 165–166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir. 1999). Therefore, when a civil rights plaintiff also sues the municipality directly, district courts generally dismiss the official capacity suits against the municipal employees. See *Vance v. County of Santa Clara*, 928 F.Supp. 993, 996 (N.D.Cal. 1996); *Carnell v. Grimm*, 872 F.Supp. 746, 752 (D.Haw. 1994); *Willis v. Bell*, 726 F.Supp. 1118, 1124 (N.D.Ill. 1989). **Accordingly, the Court will dismiss the case against these defendants in their official capacities as well.**

*Williams v. City of Saginaw*, 00-10241-BC, 2002 WL 1798907 (E.D. Mich. Aug. 6, 2002)(emphasis added). The Fourth Circuit appears to similarly discourage the inclusion of Official Capacity claims when the municipality is a party:

> The named officials were joined originally and remained parties only in their respective official capacities; the City was not originally joined but was added later by amendment.
>
> While this ultimate structuring of parties defendant was not technically erroneous, it was not required in order to prosecute a claim of municipal liability to effective judgment against a municipality. Where, as here, no claim against officials in their individual capacities was made, a simpler, technically correct, and by far **preferable structuring would have been to name the City as the sole defendant**.

15

*Spell v. McDaniel*, 824 F.2d 1380, 1396 (4th Cir. 1987)(emphasis added). Given that, as discussed more fully below, Plaintiffs' individual capacity claims against the individual Defendants should be dismissed in light of qualified immunity the "by far preferable structuring" of this action would be to list only the Wood County Board of Education as a defendant. *Id.*

Accordingly, given that the Wood County Board of Education is a party to this action, Defendants maintain that the "official capacity" claims against Superintendant Law and Principal Taylor should be dismissed[7].

### C. Defendants maintain that any claim for damages against the individual defendants should be dismissed pursuant to 11th Amendment immunity.

In their Request for Relief, Plaintiff seeks unspecified damages; however, it is unclear "from whom" Plaintiffs seek damages. (See Complaint, Request for Relief, (4)). To the extent that the Complaint requests the Court award damages against the individual Defendants Superintendent Law, Principal Taylor and/or former Assistant Vice Principal Coleman, such request is not appropriate:

> The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court.[17] This bar remains in effect when State officials are sued for damages in their official capacity. That is so because, as discussed above, "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents...."

---

[7] Defendants recognize that the style of the case, as listed in Plaintiffs' Complaint, indicates that only Superintendent Law and Principal Taylor are named in their "official capacity"; however, the Prayer for Relief, as it relates to the alleged violations of the United States Constitution, references, generally, the "actions of Defendants" (Complaint, Request for Relief, ¶ (3)(ii). Therefore, to the extent Plaintiffs seek to allege violations of the United States Constitution against Former Assistant Principal Coleman in her "official capacity", Defendants request, out of an abundance of caution, that said claim be dismissed along with the official capacity claims against Superintendent Law and Principal Taylor.

16

*Kentucky v. Graham*, 473 U.S. 159, 169 (1985)(internal citations omitted); see also *Ford Motor Co. v. Department of Treasury of Indiana,* 323 U.S. 459, 464 (1945); *Cory v. White,* 457 U.S. 85, 90 (1982); *Edelman v. Jordan,* 415 U.S. 651, 663 (1974); *Brandon v. Holt,* 469 U.S. 464, 471 (1985).

> The Court has held that § 1983 was not intended to abrogate a State's Eleventh Amendment immunity. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan,* 415 U.S. 651 (1974).

*Kentucky v. Graham*, 473 U.S. 159, 169 n.17 (1985). Accordingly, to the extent Plaintiffs seek damages from any Defendant in their official capacity, Defendants maintain that said claim for damages should be dismissed.

## V. CONCLUSION

As discussed more fully above, the entirety of Plaintiffs §1983 Claims against the Defendants should be dismissed in light of this Court's Memorandum Opinion and Order. However, if this Court is not inclined to dismiss the entirety of Plaintiffs §1983 Claims, Defendants maintain that Plaintiffs' individual capacity claims and official capacity claims should be dismissed.

/s/*Aaron C. Boone*
Robert J. Kent (5010)
Aaron C. Boone (9479),
Counsel for Defendants
Bowles Rice LLP
Fifth Floor, United Square
501 Avery Street, Post Office Box 49
Parkersburg, West Virginia  26102
(304) 420-5504
rkent@bowlesrice.com
aboone@bowlesrice.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

JANE DOE, individually and as
next friend to her minor daughters,
ANNE DOE, BETH DOE and
CAROL DOE,

   Plaintiffs,

vs.                    CASE NO. 6:12-cv-04355
                        JUDGE GOODWIN

WOOD COUNTY BOARD OF EDUCATION,
J. PATRICK LAW, Superintendent, in his Official
Capacity, STEPHEN TAYLOR, Principal,
Van Devender Middle School, in his Official and
Individual Capacity, and PENNY TONELLI COLEMAN,
Former Assistant Principal of Van Devender Middle School,
in her Individual Capacity,

   Defendants.

## CERTIFICATE OF SERVICE

   I hereby certify that on September 7, 2012, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

Roger D. Forman, Esquire
Christina Brandt-Young, Esquire
Amy Lynn Katz, Esquire
Lenora M. Lapidus, Esquire
Marissa P. Harris, Esquire
Joshua A. Hartman, Esquire
Roxann E. Henry, Esquire
Sarah Rogers, Esquire

   and by depositing the same in the United States Mail, postage prepaid, addressed to:

19

Galen Sherwin, Esquire
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
Women's Rights Project
18th Floor
125 Broad Street
New York, NY  10004

>*/s/ Aaron C. Boone*
> Aaron C. Boone