# EXHIBIT 1

to **PLAINTIFFS' MOTION TO COMPROMISE AND SETTLE CLAIMS**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

JANE DOE, individually and as
next friend to her minor daughters,
ANNE DOE, BETH DOE, and            CASE NO. 6:12-cv-04355
CAROL DOE,            JUDGE GOODWIN

           Plaintiffs,

vs.

WOOD COUNTY BOARD OF EDUCATION,

           Defendant.

**CONSENT DECREE**

This Consent Decree is entered into this 3rd day of July, 2013, by and between Jane Doe, individually and as next friend of her minor daughters, Anne Doe, Beth Doe, and Carol Doe ("Plaintiffs") and Wood County Board of Education ("WCBOE") (collectively "the Parties").

**RECITATIONS**

WHEREAS, in the 2012-2013 school year, and in one or more prior school years, WCBOE has operated single-sex classes at Van Devender Middle School in Parkersburg, West Virginia;

WHEREAS, Plaintiffs have alleged, and Defendant has denied, that the single-sex classes operated by WCBOE constitute sex discrimination in violation of federal law, specifically the Equal Protection Clause of the Fourteenth Amendment and Title IX, 20 U.S.C. § 1681, as interpreted by the Department of Agriculture and Department of Education in

1

regulations 7 C.F.R. § 15a.34 and 34 C.F.R. § 106.34 and Plaintiffs have initiated this action to challenge the legality thereof;

WHEREAS, the parties desire to enter into this Consent Decree in full settlement of and to discharge all claims that are, or might have been, the subject of this action, including claims for damages and/or claims for attorneys' fees, on the terms and conditions set forth herein; and

WHEREAS, the parties to this Consent Decree understand that this settlement is intended to include a full and complete release of any and all claims that exist between the parties, including any claims regarding any activity of the WCBOE or its employees that occurred after the filing of the Complaint up until and including the date of this Consent Decree, except for any continuing obligations created by this Consent Decree;

NOW, THEREFORE, in consideration of the above Recitations, which are hereby made part of this Consent Decree, and for other good valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is agreed as follows:

1. WCBOE, and each public school under its jurisdiction, shall not provide any Single-Sex Activity for the remainder of the 2012-2013 school year or for the 2013-2014 or 2014-2015 school years. After the 2014-2015 school year, WCBOE will initiate Single-Sex Activity only if the program meets the requirements of the U.S. Constitution and Title IX, as interpreted by the Court's Memorandum Opinion and Order on August 29, 2012, including, without limitation, the requirement that WCBOE obtain clear and affirmative assent from parents or legal guardians prior to enrolling students into any Single-Sex Activity. For purposes of this Consent Decree, and with the exceptions set out in

paragraph (2) below, "Single-Sex Activity" means: any course or other education program or activity carried out separately on the basis of a student's sex, including all classes, extracurricular activities, recess, lunch, and physical education, or a requirement or refusal of participation in any school, course, or education program or activity by any students on the basis of a student's sex.

2. The above paragraph (1) does not apply to the following activities, and this Consent Decree does not modify the WCBOE's existing legal obligations as to the following activities:

    a. Separation of students by sex within physical education classes or activities for participation in wrestling, boxing, rugby, ice hockey, football, basketball, or other sports, the purpose or major activity of which involves bodily contact;

    b. Grouping of students by ability as assessed by objective standards of individual performance developed and applied without regard to sex;

    c. Portions of classes in elementary and secondary schools that deal primarily with human sexuality;

    d. Requirements based on vocal range or quality that may result in a chorus or choruses of one or predominantly one sex; or

    e. Interscholastic or intramural athletics.

3. If, in advance of and/or during the 2015-2016, 2016-2017, and 2017-2018 school years, the WCBOE seeks to initiate any Single-Sex Activity at any public school under its jurisdiction, except those activities exempted in paragraph (2) above, WCBOE shall, within no less than one hundred twenty (120) days prior to initiating[1] such Single-Sex Activity, give written "Notice of Intent to Proceed with Single-Sex Education Program" (hereinafter referred to as "Notice") to Plaintiffs, through their counsel.[2] The written Notice shall conform to the requirements of Fed. R. Civ. P. 26(g)(1)(A) that it be complete and correct as of the time it is made to the best of the WCBOE's knowledge, information, and belief formed after a reasonable inquiry, and include the following:

    a. Description of the proposed Single-Sex Activity;[3]

    b. Documents, materials, and other evidence demonstrating the purpose, rationale, and basis for the expected efficacy of the proposed Single-Sex Activity;

    c. Data or analysis regarding the proposed Single-Sex Activity;[4] and

---

[1] For purposes of this Consent Decree, the phrase "initiating such Single-Sex Activity" shall mean the first day of school on which students are taught or provided classroom instruction pursuant to the constructs of the Single-Sex Activity.

[2] The notice provisions in paragraphs 3-5 do not apply if the WCBOE plans to initiate a Single-Sex Activity in the 2018-2019 school year.

[3] For purposes of this Consent Decree, the phrase "description of the proposed Single-Sex Activity," shall mean an identification of teachers and the subjects and grade levels that they will teach pursuant to the Single-Sex Activity, if applicable; logistical information regarding how WCBOE will disseminate the "Opt-In Form" to parents and collect completed Opt-In Forms; logistical information as to how WCBOE will honor the parents' wishes for their children, as they relate to enrolling or declining to enroll their children in the Single-Sex Activity; and information as to how the school's regular coeducational program will proceed.

[4] For purposes of this Consent Decree, the phrase "data or analysis regarding the proposed Single-Sex Activity" means any data or analysis upon which WCBOE relies for its decision to implement the Single-Sex Activity, and includes without limitation minutes, recordings, or transcripts of WCBOE meetings at which the proposal to

    d.  Copies of materials that have been and/or will be provided to teachers, faculty, students, and/or parents regarding the proposed Single-Sex Activity.[5]

Although, as stated above, WCBOE must give to Plaintiffs, through their counsel, written Notice no less than one hundred twenty (120) days prior to initiating a Single-Sex Activity, the parties agree that WCBOE is obligated to supplement and/or amend the Notice and the material provided if the Notice or material provided is incomplete or incorrect.  The amended Notice and/or supplemental information shall be delivered to Plaintiff by May 15 of the school year preceding the commencement of the proposed Single-Sex Activity, or the next regular business day if May 15 falls on a weekend or other day that the WCBOE is not open for business.

    4.  Within forty-five (45) days of the WCBOE submitting the Notice, counsel for Plaintiffs will submit, in writing, any objections to the WCBOE regarding the proposed Single-Sex Activity.

    5.  As soon as possible, but not more than twenty (20) days after WCBOE submits the Notice to counsel, and provided the WCBOE still wishes to proceed with the Single-Sex Activity, the WCBOE will file a Petition to Modify the Court's Order of Dismissal

---

institute a Single-Sex Activity was discussed, research, studies, the results of standardized testing, information outlining behavioral and academic performance needs that the Single-Sex Activity will seek to address, and any evidence regarding the efficacy of single-sex programming, where applicable.

[5] For purposes of this Consent Decree, the phrase "materials that have been and/or will be provided to teachers, faculty, students, and/or parents regarding the proposed Single-Sex Activity" shall include correspondence, presentations, and other materials provided to parents describing the Single-Sex Activity and how it will be implemented; a copy of the "Opt-In Form" that will be disseminated to parents so that the parents may choose whether to enroll their children in the Single-Sex Activity; materials describing the coeducational alternative(s) available and explaining how it will proceed in conjunction with the Single-Sex Activity; copies of pertinent training materials provided to teachers and faculty regarding the Single-Sex Activity; information about any outside speakers retained to train teachers regarding the Single-Sex Activity; and information about any educational conferences teachers and faculty may have attended or will attend regarding any Single-Sex Activity.

and Permanent Injunction (the "Petition"), as described below, and request that the Court enter an appropriate Order permitting the WCBOE to proceed with the Single-Sex Activity. In support of its Petition, the WCBOE will include a copy of the Notice and all documents and materials provided therein. Plaintiffs, by their counsel, may submit an opposition to the Petition within fifteen (15) days of service.

6.  The WCBOE will permit a representative of the Plaintiffs to visit Van Devender Middle School during each year that, pursuant to the terms of this Consent Decree, the WCBOE agrees to not conduct any Single-Sex Activity. The purpose of this provision is to provide a mechanism by which the Plaintiffs can ensure that the WCBOE is not engaging in any Single-Sex Activities prior to the 2015-2016 school year.

7.  If, during or after the 2015-2016 school year, the WCBOE is granted permission to commence any Single-Sex Activity at Van Devender Middle School, the WCBOE agrees to permit a representative of the Plaintiffs to visit Van Devender Middle School during the first year any Single-Sex Activity commences. The purpose of this provision is to provide a mechanism by which the Plaintiffs can ensure that the WCBOE is conducting any Single-Sex Activity in accordance with the terms of this Consent Decree and the Court's prior orders, including any orders given during the Notice process discussed in paragraphs 3, 4, and 5 of this Consent Decree. If, at any time subsequent to the initiation of the Single-Sex Activity, the WCBOE provides written notice to the Plaintiff that the WCBOE intends to discontinue the Single-Sex Activity at Van Devender Middle School, then all visits by the Plaintiffs' representative pursuant to the terms of this paragraph shall cease.

8. The parties agree that the Plaintiffs' representative will provide the WCBOE with at least five (5) days' notice of its intent to conduct a visit pursuant to paragraphs 6 and 7 above, and will further indicate the name of the person who will be conducting the visit and the proposed date and time of said visit. The parties agree that the frequency and duration of visits conducted by the Plaintiffs' representative shall be reasonable. The parties further agree that the WCBOE may select a representative to attend the visit(s) along with the Plaintiffs' representative.

9. Within fifteen (15) business days of the Court's approval of this Consent Decree, WCBOE shall pay the sum of $65,000 for attorneys' fees and costs to the American Civil Liberties Union of West Virginia Foundation, Post Office Box 3952, Charleston, WV 25339.

10. Within fifteen (15) business days of the Court's approval of this Consent Decree, WCBOE shall pay the sums specified in Attachment A to Jane Doe (individually), and to Jane Doe as next friend of Anne Doe, Beth Doe, and Carol Doe. Attachment A is to be considered a part of this Consent Decree, and is incorporated herein by reference.

11. The true names of the Plaintiffs and the settlement amounts paid by the WCBOE shall be kept confidential by all parties, except as required by law or as necessary for fulfillment of tax obligations, for accounting purposes, or for purposes of consultation with legal counsel.

12. WCBOE agrees that WCBOE, including but not limited to any officer, employee, or agent of WCBOE, shall not harass, intimidate, disparage, or otherwise retaliate against Plaintiffs.

13. As consideration for these commitments by WCBOE, the Plaintiffs hereby release WCBOE, National Union Fire Insurance Company of Pittsburgh (the WCBOE's insurer), any AIG company, and each of their agents, officers, employees, directors, board members, assigns, and successors, and all other persons, firms, and/or corporations that are liable and/or potentially liable, none of whom admit liability, but all of whom expressly deny liability, from any and all claims, demands, damages, actions, causes of actions, or suits of any kind or nature whatsoever, including, but not limited to, attorneys' fees, and particularly on account of all injuries and damages, known and unknown, that exist between the parties, including any claims regarding any activity of the WCBOE or its employees that were the subject of this civil action and/or that occurred after the filing of the Complaint through the date of execution of this Consent Decree, except for any continuing obligations created by this Consent Decree or for the breach of the terms and conditions of this Consent Decree.

14. Prior to the signing of this Consent Decree, Plaintiffs shall file a motion with the Court to approve the settlement as relates to the minors. The motion to approve settlement will request that the Court "so order" this Consent Decree and that the Court approve the settlement as relates to the minors.

15. No later than ten (10) business days following the date of the signing of this Consent Decree by both Parties, Plaintiffs shall file a motion to dismiss and a

proposed order of dismissal. The motion to dismiss and proposed order of dismissal will incorporate this Consent Decree in its entirety and will request that the Court enter an appropriate Permanent Injunction Order, embodying the proposals stated herein, and that the Court dismiss this action, subject to any subsequent Petition to Modify (as discussed more fully above).

16. The Parties agree that Attachment A contains the true names and identities of Plaintiffs and the monetary settlement amounts disbursed to each. Defendant shall not disclose those true names and identities to anyone, including, without limitation, Van Devender school faculty or administration, parents, students, or the media, except as required by law or as necessary for fulfillment of tax obligations, for accounting purposes, or for purposes of consultation with legal counsel.

17. The Parties agree that Attachment B contains the executed signature pages of this Consent Decree. Attachment B is to be considered a part of this Consent Decree, and is incorporated herein by reference. Plaintiffs will move the Court to file this Consent Decree and Attachments A and B under seal. Once "so ordered," this Consent Decree shall be entered into the public record and Attachments A and B shall remain under seal.

18. It is understood that this Consent Decree is not to be construed as an admission of liability on the part of WCBOE.

19. The Parties declare and understand that no promises, inducements, or agreements not contained in this Consent Decree have been made to them and that the terms of this Consent Decree are contractual and not merely a recital.

20. This Consent Decree contains the entire agreement between the Parties with respect to this subject matter and there are no agreements, understandings, representations, or warranties between the Parties other than those set forth or referred to in this Consent Decree.

21. This Consent Decree shall be construed as a whole, according to its fair meaning, and not in favor of or against any Party. By way of example, and not in limitation, this Consent Decree shall not be construed in favor of the Party receiving a benefit nor against the Party responsible for any particular language in this Consent Decree. Captions are used for reference purposes only and should be ignored in the interpretation of the Consent Decree.

22. If any provision of this Consent Decree shall be determined to be invalid, illegal, or unenforceable for any reason, the remaining provisions and portions of this Consent Decree shall be unaffected and unimpaired, and shall remain in full force and effect, to the fullest extent permitted by applicable law.

23. Attachment B to this Consent Decree may be executed in counterparts, by either an original signature or signature transmitted by facsimile or other similar process, and each copy so executed shall be deemed to be an original and all copies so executed shall constitute one and the same Consent Decree.

24. This Consent Decree may not be modified or amended, nor may any term or provision be waived or discharged, except in writing signed by all Parties. The waiver of any breach of any provision of this Consent Decree shall not constitute or operate

as a waiver of any other breach of such provision or of any other provision, nor shall any failure to enforce any provision operate as a waiver of such provision or of any other provision.

25. This Consent Decree shall be interpreted according to the laws of the State of West Virginia.

26. This Consent Decree shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

27. The Court shall retain jurisdiction over this matter for a period of five (5) years up to and including July 3, 2018 for the purposes of enforcing this Consent Decree. The terms and obligations of this Consent Decree and the Court's Permanent Injunction Order will terminate on July 4, 2018.

Dated: July 3, 2013                     Respectfully Submitted,

| | | |
|---|---|---|
| Robert J. Kent (5010) | Sarah Rogers | |
| Aaron C. Boone (9479) | Staff Attorney, American Civil | Roxann E. Henry |
| Bowles Rice LLP | Liberties Union of | Marissa P. Harris |
| Fifth Floor, United Square | West Virginia Foundation | Joshua A. Hartman |
| 501 Avery Street | P.O. Box 3952 | Morrison & Foerster LLP |
| Post Office Box 49 | Charleston, WV 25339-3952 | 2000 Pennsylvania Ave. NW |
| Parkersburg, WV 26102 | (304) 345-9346 | Suite 6000 |
| (304) 485-8500 | srogers@acluwv.org | Washington, D.C. 20006 |
| rkent@bowlesrice.com | | (202) 887-1500 |
| aboone @bowlesrice.com | Lenora M. Lapidus | RHenry@mofo.com |
| | Galen Sherwin | MHarris@mofo.com |
| *Attorneys for Defendant* | Amy Lynn Katz | JHartman@mofo.com |
| | American Civil Liberties | |
| | Union Foundation | *Attorneys for Plaintiffs* |
| | Women's Rights Project | |
| | 125 Broad Street, 18th Floor | |

11

        New York, NY 10004  
        (212) 549-2615  
        LLapidus@aclu.org  
        gsherwin@aclu.org  
        wrp_ak@aclu.org

**IT IS SO ORDERED.**

_____  
Hon. Judge Joseph R. Goodwin